## UNITED STATES v. FARMER et al.

(District Court, S. D. New York. January 31, 1914.)

**1.** POST OFFICE (§ 48\*)—MISUSE OF MAILS—SCHEME TO DEFRAUD.

Where an indictment charged that defendants devised a scheme to defraud divers and unknown persons by inducing them to purchase from defendants certain alleged de luxe editions of books, the exact character of which was to the grand jury unknown, and to induce such purchase falsely and fraudulently represented that the books were rare, valuable, and limited editions, whereas, in fact, the books, as defendants and each of them well knew, were not rare, nor of valuable and limited editions, but were books bound in a showy and pretentious manner, and of little intrinsic value, with a market value far below the price at which such persons should be induced to purchase them, it was not demurrable, as failing to adequately describe the books relied on as the subject-matter of the scheme to defraud.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.\*]

**2.** POST OFFICE (§ 35\*)—MISUSE OF MAILS—SCHEME TO DEFRAUD.

The government is not limited, in enforcing the purity of the mail service by criminal prosecutions, to attempts to use the mails to further a scheme to defraud, definitely devised in the first instance with respect to the particular instruments of fraud and the particular proposed victims; but it is sufficient if, after the devising of a scheme of general features, it is alleged and shown that in the exercise thereof particular instruments and particular victims have been developed and a use attempted to be made of them.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.\*]

**3.** POST OFFICE (§ 48\*)—MISUSE OF MAILS—SCHEME TO DEFRAUD—INDICTMENT.

An indictment for misuse of the mails, in furtherance of a scheme to defraud by selling alleged de luxe editions of books falsely represented to be valuable, in connection with offers to resell them for the victims at a higher price, was not objectionable for failure to specify the names of the persons to whom defendants were charged to have represented that the books would be resold.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.\*]

**4.** POST OFFICE (§ 48\*)—MISUSE OF MAILS—FALSE REPRESENTATIONS.

An indictment for misuse of the mails, in furtherance of a scheme to defraud by the sale of alleged de luxe editions of books, under false representations to resell them as agents of the victims for higher prices, was not demurrable on the theory that such representations concerning the resale were of a mere opinion character as to the value and future obligation.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.\*]

**5.** CRIMINAL LAW (§ 16\*)—FRAUDULENT USE OF MAILS—STATE STATUTES.

Cr. Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1092 (Comp. St. 1913, § 10385), prohibiting the use of the mails to promote frauds, etc., is violated whenever the mails are used for the furtherance, whether effective or not, of any scheme of a fraudulent character to perpetrate, if fully executed, a fraud on any person or persons, whether such device is reprehended by any state law, or whether from the limitations of the state or federal statute, or the definitions of the common law, the scheme, if carried out, would not be punishable; and hence it is no objection to an indictment that the scheme, to carry out which the assistance of the mails

is to be invoked, is obnoxious to some state statute, or is of a character responsible to the police powers of the state only.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3–5; Dec. Dig. § 16.*]

James J. Farmer and others were indicted for misuse of the mails in furtherance of a scheme to defraud, and demurred to the indictments. Overruled.

Frank Morse Roosa and John Neville Boyle, Asst. U. S. Attys., both of New York City.

Max J. Kohler, of New York City, for defendants.

KILLITS, District Judge. The court has before it the demurrer of several of the defendants to each of the six counts of the indictment herein. Three of these counts, 1, 2, and 5, deal with alleged violation of sections 37 and 215 of the Criminal Code, while 3, 4, and 6 are drawn to meet the provisions of section 215 alone. In the opening paragraph of the principal brief for demurring defendants, it is alleged that these two categories of counts are, first, "for conspiracy to devise a scheme to defraud;" and, second, "for perpetrating such a scheme." In this attempt to describe the nature of the indictment is found an index to the confusion of mind which seems to have inspired the demurrer itself. Counts 1, 2, and 5 are not for conspiracy to devise a scheme to defraud, but they are for a conspiracy to commit an offense against the United States, the offense being to use the mails to further a scheme to defraud, while the third, fourth, and sixth counts, so far from being attempts to plead a perpetration of a scheme to defraud (which would not be cognizable in the federal court at all), are each an attempt to plead the use of the mails in an effort to further a scheme to defraud. The distinction we are making in each case is vital to the interpretation of the conspiracy of this indictment in each count.

[1] Going now to the points made in the principal brief against the indictment, we notice, first, that the indictment is charged as "bad and insufficient for failure adequately to describe the books relied upon as the subject-matter of the scheme to defraud." The indictment charges that the defendants devised a scheme to defraud divers and unknown persons, by inducing said persons "to purchase from the said defendants books, among others, in editions de luxe, the exact character of said books being to the grand jurors unknown; and said defendants, for the purpose of inducing said persons so intended to be defrauded to purchase said books, intended falsely and fraudulently to represent to said persons, and to each of them, that said books were of rare, valuable, and limited editions, and were of a value at and far in excess of the price at which they, the said persons so intended to be defrauded, should be induced to purchase them; whereas, in truth and in fact, the said books, as the defendants, and each of them, well knew, were not rare, nor of valuable and limited editions, but were books bound in a showy and pretentious manner, and of little intrinsic value and worth, and had a market value far below the price at which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

the said persons so intended to be defrauded should be induced to purchase them."

It is the opinion of counsel for demurrants, touching this phase of the indictment, that the case will turn, upon this branch of it, wholly upon the identity of the books "whose value, rarity, and limited edition character is in question." That doubtless is true, but we conceive a case to be possible, and that this, so far as the terms of the indictment are concerned, may be such, where the conspirators have simply agreed upon a scheme to defraud of this character, without having determined, as part of the formalities of their scheme, the exact, particular books which they shall use in its execution, but agree, in formulating the scheme, tacitly or directly, to leave the identity of the publications to the exigencies of the future, as the scheme is attempted to be executed; in other words, that the government cannot be held, in the trial of this case, to prove that a book of any particular description was within the contemplation of the parties when the devising of the alleged scheme was in process, much less, therefore, should the indictment fail because no such particular allegation was made.

It follows, therefore, that the allegation of ignorance by the grand jury of the exact character of the books contemplated by the defendants was fair and proper, and that the subsequent language of this portion of the indictment, in the averment that the books were not rare, nor valuable, nor of limited editions, but were otherwise, is not inconsistent; for it is a fair construction of all the language of the indictment germane to this particular question that here the pleader was attempting to describe in a general way, in the nature of a negative, the character of books in the minds of the defendants at the time the scheme was being devised.

We are unable to find any support for this branch of the attack upon the indictment in the cases cited. In Stewart v. United States, 119 Fed. 89, 55 C. C. A. 641, the indictment was so manifestly different from that before us, and in the difference so defective, that the case cannot be cited as an authority in favor of the demurrer; for, in the court's judgment, the generalizing of that court, on page 94 of 119 Fed. (55 C. C. A. 641), as to what the indictment should contain, is met by the indictment before us. Without taking further time on this case, it is sufficient to call attention to the vice found in the Stewart indictment, discussed on page 95 of the opinion, which vice certainly does not exist in the indictment before us.

In United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516, as in United States v. Post (D. C.) 113 Fed. 852, the indictment charged only in the language of section 5480, Rev. Stat. (now, with some modifications, section 215 of the Criminal Code). The weakness of that in the Hess Case, as it is set out in 124 U. S. on page 484, 8 Sup. Ct. 571, 31 L. Ed. 516, in the opinion, is not present in the pleading before us. As we read Bartell v. United States, 227 U. S. 427, 33 Sup. Ct. 383, 57 L. Ed. 583, so far as it is of interest at all in this matter, it is an authority supporting this phase of the indictment, which, in our judgment, needs no further authority than that of Brown v. Elliott, 225 U. S. 392, 32 Sup. Ct. 812, 56 L. Ed. 1136, and Durland v. United

States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709. Even in the Durland Case it is held that the omission to state the names of the parties intended to be defrauded is satisfied by the allegation, if true, that they were unknown to the grand jurors.

[2] Consistent with all authorities, direct and analogous, we are clear that the government ought not to be limited in enforcing the purity of the mail service by a criminal prosecution in this particular to attempts to use the mails to further a scheme to defraud definitely devised in the first instance with respect to the particular instruments of fraud and the particular proposed victims, but that it is sufficient if, after the devising of a scheme of general features, it should be alleged and shown that in the execution thereof particular instruments and particular victims were developed and a use attempted to be made of them.

[3] The second point is that:

"The indictment is also bad because of failure to specify the names of the alleged persons to whom defendants are charged to have represented that the books would be resold."

Again, in an attempt to make this point, counsel seem to have misread the indictment. It does not, as the argument says, attempt to charge a promise to "resell and cause to be resold said books at a great increase in price, such resale to be made to certain alleged persons, who the defendants should falsely represent were and would be ready and willing to repurchase," whereas, in truth and in fact, "said alleged persons did not in fact exist, but were wholly and entirely fictitious"; but it charges that, as a part of said scheme and artifice the defendants should falsely and fraudulently represent and pretend that the books would be resold for the purchaser, if he should become dissatisfied, to certain alleged persons who were wholly fictitious. With respect to these matters, the whole proposition is subjunctive and in futurity. The pleader is not attempting to plead any specific promise made to any attempted victim of the fraud, but is pleading the outlines of the fraudulent scheme itself, and the scheme would be no less obnoxious to the federal statute invoked here if the schemers at the time had not definitely had in mind any person whose name should be used as the one to rebuy the books from the dissatisfied victim, than it would be if, at the inception of the scheme, some one should have been definitely selected by the schemers to play that fraudulent role.

[4] The third point made is that:

"Mere representations of an opinion character, as to value and future obligations to resell, are averred, which are not within this criminal statute."

This point is not argued, but certain authorities are cited simply. These authorities, in our judgment, would be good if the gist of the offense here were the obtaining of property by false representations, in which case, of course, mere representations of an opinion character are not sufficient upon which to found a prosecution. As this case is presented in the indictment, we can see no validity in this objection.

[5] Point 4, that "the conspiracy counts are bad because, under the federal Constitution, no federal element is present in a charge of

conspiracy to commit the offense under section 215, but merely an offense against the states," is substantially disposed of by what has preceded in this memorandum, if we understand the point at all. As we interpret section 215, that section is violated whenever the mails are used for the furtherance, effective or not, of any scheme or device of a fraudulent character to perpetrate, if fully executed, a fraud upon any person or persons, whether such device is reprehended by any state law, or whether, from the limitations of state or federal statutes or the definitions of the common law, the scheme, if carried out, would not be punishable. So that it is no objection to an indictment that the scheme to carry out which the assistance of the mails is to be invoked is obnoxious to some state statute, or is of a character under our polity responsible to the police powers of the state only.

In considering, as we have done, the principal brief in the case, that of Mr. Kohler, for the defendants Farmer, Marr, Rosenfield, Dunn, Scott, and the Anglo-American Authors' Association, we have covered, in our judgment, practically the points made in the brief of Mr. O'Connell for the defendant Cooper.

The tendency in the federal practice is to disregard all purely technical objections to criminal pleadings. In this case we think this indictment attempts to plead offenses clearly within sections 37 and 215 of the Criminal Code as to the respective counts, and that the averments are not only as definite as the grand jury could well have made them under most circumstances, but sufficiently apprise the defendants of the nature of the charge and what they are called upon to meet, so that a conviction, if had against any one of them, would be a bar to a further prosecution.

The demurrers are therefore overruled.