## STEWART v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 3, 1902.)

### No. 1,717.

1. CRIMINAL LAW—HABEAS CORPUS—JURISDICTION OF COURTS—REMOVAL OF PRISONER—SUFFICIENCY OF INDICTMENT.

Where a prisoner arrested under a warrant based on an indictment in a foreign district is committed for removal to the foreign district solely on the strength of the indictment, the circuit or district court of the district in which he is arrested has authority on habeas corpus to examine the indictment, and to release the prisoner in case it is fundamentally defective.

2. SAME—USING THE MAILS TO DEFRAUD—INDICTMENT.

An indictment under Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], punishing the use of the mails with intent to defraud, must allege that defendants had devised a scheme to defraud, which was to be effected by opening or intending to open correspondence with some person by means of the use of the mails, or by inciting such person to open communication with defendants, or some of them, and that, in the execution of the scheme, defendants either placed a letter in a post office, or took one therefrom.

3. SAME.

Another requisite of such an indictment is that the fraudulent scheme must be described with sufficient certainty to inform defendants with reasonable certainty of the nature of the evidence to establish the scheme which will be adduced at the trial.

4. SAME.

An indictment under Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], found in the district of Kansas, after alleging that defendants' fraudulent scheme was to be effected by inciting divers persons to open correspondence with them, averred that a third person named deposited in a post office in Kansas a letter addressed to one of the defendants at a city in Missouri, but without alleging that it was taken from the mails by the addressee or any of the other defendants. *Held*, that if the court could assume, in the absence of an express averment to that effect, that the letter was taken from the mails by the addressee or by the other defendants, it would appear that the offense was committed in Missouri.

5. SAME.

A count in an indictment under Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], alleged that the fraudulent scheme devised by defendants was to induce, by the use of the mails, persons to come to a designated city in Missouri, in the expectation of there defrauding them by various artifices not then conceived. It showed that the mails were not the sole means defendants intended to employ to induce persons to come to such city. It also showed that the letter written by one of the defendants

to a third person, on which the count was founded, was deposited in the mail long after the person to whom the letter was addressed had been induced to go to the designated city by oral representations made to him by a party to the scheme, and had been induced to part with his money by the various fraudulent pretenses and artifices there resorted to. *Held*, that the indictment did not clearly show that the letter in question was deposited in the mail in execution of the alleged scheme to defraud, but rather disclosed that it was so deposited after the scheme so described had been executed. *Held*, further, that the indictment contained so many redundant and immaterial allegations as to render it almost unintelligible, and that it was so far lacking in certainty of averment that it ought to be quashed on a motion to that effect.

Appeal from the District Court of the United States for the Western District of Missouri.

This was a proceeding by habeas corpus. An indictment was returned against J. P. Stewart, the appellant, and against Robert Boatright, E. E. Ellis, L. B. Gillett, and G. O. Stansbury, on November 15, 1901, in the district court of the United States for the district of Kansas, Third division, charging them with an offense under section 5480 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3696]. Stewart, the appellant, being a resident of the Western district of Missouri, a complaint was filed by A. S. Van Valkenburgh, assistant United States attorney for the Western district of Missouri, before John M. Nuckols, United States commissioner within and for said district. Such complaint was made pursuant to the provisions of section 1014 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 716]. A warrant was issued by the commissioner, under which Stewart was arrested and brought before him for a hearing, at which the commissioner held the defendant to bail in the sum of $2,000, to appear on the first day of the next term of the district court of the United States for the Third division of the district of Kansas. The defendant Stewart failed to give the required bond, whereupon the commissioner committed him to the custody of the marshal for the Western district of Missouri until a warrant of removal should be issued by the United States district judge for said Western district of Missouri pursuant to section 1014 of the Revised Statutes [U. S. Comp. St. 1901, p. 716]. The appellant then applied for a writ of habeas corpus to the district court of the United States for the Western district of Missouri, and such a writ having been issued, and a return made thereto by the marshal who held the accused in custody, the district court ordered the writ to be discharged, and remanded the appellant to the custody of the marshal. The present appeal is from such appeal.

The question considered below, and for determination by this court, is whether the indictment which was returned and filed in the United States district court for the district of Kansas stated an offense under section 5480 of the Revised Statutes [U. S. Comp. St. 1901, p. 3696]. As the indictment is quite lengthy and involved, and contains many immaterial allegations, the most material parts thereof, only, will be stated in hæc verba. Omitting the introductory part, the indictment charged that Stewart, Boatright, Gillett, and Stansbury "on or about the second day of August in the year * * * 1901 at the Third division of the district of Kansas * * * having before that time knowingly, wrongfully and unlawfully devised a scheme and artifice to defraud one J. M. Davis, of Bourbon county, Kansas, and certain other persons whose names are to the grand jurors * * * unknown of large sums of money, to wit: about $6,500, and other large sums of money from divers other persons, which said sums and the names of such other persons being to the grand jurors * * * unknown and which said scheme and artifice to defraud was to be effected by opening and intending to open correspondence and communication with the said J. M. Davis and one Joseph Cooke, both of Bourbon county, Kansas, and divers other persons whose names and addresses are to the grand jurors aforesaid unknown and by inciting and intending to incite and causing and intending to cause the said J. M. Davis and the said Joseph Cooke and divers other persons * * * to open correspondence and communication with the said Robert Boatright, J. P. Stew-

art, E. E. Ellis, L. B. Gillett and G. O. Stansbury * * * and other persons to the grand jurors unknown, by means of the post-office establishment of the United States which said use and misuse of the post-office establishment of the United States was a part of said scheme and artifice to defraud and which said scheme and artifice to defraud was and is in substance and effect as follows, to wit: that Webb City, Jasper county, Mo., is the headquarters for the defendants [above named] and a large number of other persons associated with said defendants, the names of such other persons being to the grand jurors aforesaid unknown, all of whom are associated together and have for a common purpose and design the promotion of pretended and fraudulent foot races, that among said defendants above named and their associates, with headquarters at Webb City, Mo., as aforesaid, there are a large number of persons who are known as professional foot racers, to wit: L. B. Gillett, G. O. Stansbury and others, the names of which said other professional foot racers being to the grand jurors aforesaid unknown, that it is the purpose and object of the said defendants above named ·together with the other persons associated with said defendants, by false, fictitious and fraudulent means and practices to induce divers and sundry persons throughout the United States of America and territories to visit Webb City, Jasper county, Mo., to wit, by opening and intending to [open] correspondence and communication with such divers and sundry persons and by inciting and causing such divers and sundry persons to open correspondence and communication with said defendants and their associates by means of the post-office establishment of the United States and otherwise and by inducing and procuring said defendants L. B. Gillett and G. O. Stansbury and others of the associates of said defendants to go to various places in the United States and territories and become acquainted with divers and sundry persons and by false and fraudulent statements and representations made to such persons induce and procure such divers and sundry persons to visit Webb City * * * with the end in view of causing such person so induced to visit Webb City, Mo., to wager and advance to be wagered large sums of money and other property on the result of pretended and fraudulent foot races between certain persons above mentioned, to the end * * * that such persons so induced to visit Webb City, Mo., will wager and advance to be wagered their said money and property * * * upon the result of said pretended and fraudulent foot race, the result of which said races having already been prearranged and agreed upon between the said defendants and their associates aforesaid and by means of which said [prearranged] and agreement between said defendants and their associates aforesaid, then, there and thereby intending to defraud said divers and sundry persons whom they had theretofore induced to visit Webb City, Mo.; that the said defendants and their associates at all times represented themselves to be business men and merchants at Webb City, Mo., and men of reliability * * * of good credit and of good standing in the community * * * and honest in all [the] dealings, and able, willing and ready to meet any and all obligations incurred by them or any of them, when in truth and in fact the said defendants and their associates were associated together for the purpose and object of defrauding various persons whom they might induce or cause * * * to visit Webb City * * * for the purpose aforesaid, and in truth and in fact it was not the intention of the said defendants nor any of their associates to deal honestly with any person so induced to visit Webb City, Mo., * * * and in truth and in fact the said defendants were not honest, respectable nor reliable men, nor were they men of good standing in the community in which they lived nor were they willing or ready to meet their business obligations, but in truth and in fact the said defendants and their associates were gamblers, confidence men and swindlers, as they the said * * * defendants then and there well knew." After alleging the scheme to defraud in the manner aforesaid, the pleader next alleged in great detail what was done in the execution of the scheme. These allegations may be stated, in substance, and with greater brevity than in the indictment, as follows: The defendant Gillett went to Bronson, Kan., where Davis resided. He there made the acquaintance of Davis, and told him that he (Gillett) was a professional foot racer; that he knew a man by the name of Ellis, at Webb City, Missouri, who would bet a

large sum of money on a foot racer by the name of Stansbury, and another man, by the name of Boatright, who would wager a large sum of money that he (Gillett) could beat Stansbury in a foot race; that Ellis would not bet with Boatright, because the latter knew how fast Stansbury could run, but that, if a stranger like Davis came along, Ellis could be induced to bet with him. He accordingly proposed that Davis should go to Webb City and make a bet with Ellis, telling him that Boatright would furnish the money, and allow him (Davis) 25 per cent. of what was won. Davis accordingly went to Webb City, and was there introduced by Gillett to Boatright and to the appellant Stewart, the latter of whom represented to Davis that Boatright was a reputable business man. Davis thereupon made a bet with Ellis, in the sum of $4,400, that Gillett could beat Stansbury; receiving the money wherewith to make the bet from Boatright, who was made stakeholder, and received the money back from Davis as soon as it was loaned. Thereupon Boatright represented to Davis that he had no more money to wager with Ellis upon the result of the intended foot race, but stated to Davis that, if he (Davis) would loan him $5,000, he (Boatright) would wager that further sum with Ellis upon the result of the proposed race. Davis agreed to loan the last-mentioned sum of money to Boatright on condition that the sum loaned should be refunded before the race was run. He accordingly drew a sight draft in the sum of $5,000 on the Bank of Bronson, Kan., where he had money on deposit, which draft was made payable to the order of the appellant, Stewart, who was cashier of a bank at Webb City. Stewart sent the draft to Bronson, Kan., by mail, in a letter addressed to the bank of Bronson, Kan., which requested that bank to forward the proceeds of the draft to Stewart. Boatright then pretended to make an additional bet with Ellis in the sum of $5,000 with the money which he had borrowed from Davis. The day appointed for the race arrived before Boatright had refunded the amount of the loan, and, when the race was being run, Gillett, in the course of the race, fell down, and claimed to have sustained some injury. Thereupon it was agreed that the race should be run over as soon as Gillett recovered from the injuries which he pretended to have sustained.' Gillett fell down in the course of the race, and the agreement postponing the race was made to prevent Davis from stopping payment of the draft which he had drawn on the Bank of Bronson. Joseph Cooke, who was president of the Bank of Bronson, on the receipt of the letter containing the Davis draft, wrote a letter to the appellant Stewart, under date of August 5, 1901, wherein, in payment for the sight draft drawn by Davis, he inclosed a draft on the American National Bank of Kansas City in the sum of $5,000, which latter draft was made payable to the order of J. P. Stewart, Cashier. This letter so written by Cooke to Stewart, and deposited in the mail at Bronson, Kan., is one of the letters counted upon in the indictment as constituting an offense under section 5480 [U. S. Comp. St. 1901, p. 3696]. The second count of the indictment was, in substance, the same as the first, except that it counted upon a different letter as constituting the offense; the same being a letter deposited by Davis in the mail at Bronson, Kan., on August 5, 1901, addressed to Boatright, at Webb City, Mo., whereby Davis transmitted a draft of $1,500 to Boatright, and told him to get a like amount from Ellis and deposit it in the bank. The indictment also contained a third count, substantially like the first, except that it counted upon another letter, written by Gillett to Davis, and deposited in the mail at Neal, Kan., on August 20, 1901, after the race had been postponed, wherein Gillett informed Davis that the doctor advised him that his foot, which had been injured, was healing as fast as it possibly could heal, and that he would be able to get his shoe on his foot in a week or ten days.

Edgar E. Bryant (H. C. Mechem and W. R. Robertson, on the brief), for appellant.

John S. Dean, U. S. Atty.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The consensus of judicial opinion seems to be that when a United States commissioner, proceeding under section 1014 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 716], commits a prisoner for removal to a foreign district where the prisoner has been indicted, the prisoner may apply to the federal circuit or district court of the district where he has been arrested for a writ of habeas corpus, and if, on the return to such writ, it appears that he was committed for removal solely on the strength of an indictment found in the foreign district, and without other evidence that a crime has been committed, he may be discharged, provided it appears that the indictment, on the strength of which the commitment was obtained, is essentially and fundamentally defective. A federal judge to whom an application for a warrant of removal is made under section 1014 [U. S. Comp. St. 1901, p. 716], it has been said, "misconceives his duty, and fails to protect the liberty of the citizen," if he issues the warrant solely on the strength of an indictment found in the foreign district, which does not substantially state an offense under federal laws. These propositions have been decided frequently at nisi prius, beginning with the case In re Buell, 3 Dill. 116, 120, 121, Fed. Cas. No. 2,102. See, also, In re Terrell (C. C.) 51 Fed. 213; U. S. v. Brawner (D. C.) 7 Fed. 86; In re James (C. C.) 18 Fed. 853; In re Dana (D. C.) 68 Fed. 886. The practice of issuing a writ of habeas corpus in such cases for the purpose of inquiring into the validity of an indictment on the strength of which a person has been committed to await the issuance of a warrant of removal under section 1014 of the Revised Statutes [U. S. Comp. St. 1901, p. 716] was also sanctioned and approved by the supreme court of the United States in Re Palliser, 136 U. S. 257, 10 Sup. Ct. 1034, 34 L. Ed. 514, and in Horner v. U. S., 143 U. S. 207, 12 Sup. Ct. 407, 36 L. Ed. 126.

In the present case it appears that Stewart, the appellant, was committed for removal solely on the strength of an indictment found in the district court of the United States for the district of Kansas, Third division, without other evidence of his guilt than the allegations contained in the indictment. We proceed to inquire, therefore, whether the indictment was sufficient to justify a warrant of removal. If it was insufficient, the appellant was entitled to be discharged from arrest.

In framing the indictment in question to meet the requirements of section 5480 [U. S. Comp. St. 1901, p. 3696], under which it was drawn, it was incumbent upon the pleader to allege that the defendants had devised a scheme or artifice to defraud, which was to be effected by opening or intending to open correspondence with some other person by means of the United States mail, or by inciting such other person to open communication with the defendants, or some one of them, and that, in the execution of the scheme so devised, the defendants either placed a letter in a post office of the United States, or took one therefrom. The offense denounced by section 5480 [U. S. Comp. St. 1901, p. 3696] consists either in the placing

of a letter in a United States post office, or in the receiving of one therefrom by a person who is a party to such a scheme or artifice to defraud, as the statute describes. Stokes v. U. S., 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667. It was also incumbent upon the pleader to describe the scheme or artifice to defraud which had been devised, with such certainty as would clearly inform the defendants of the nature of the evidence to prove the existence of the scheme to defraud, with which they would be confronted at the trial.

It is to be observed, in the first place, that in so far as the letter mentioned in the first count of the indictment is concerned, namely, the one written by Joseph Cooke, and deposited in the post office at Bronson, Kan., on August 5, 1901, it is not alleged anywhere in the indictment that it was taken from the mail by Stewart or by any of the other defendants; and even if it was so taken from a post office, or if we assume, in the absence of a positive averment to that effect, that it was so taken, the act of receiving it from the post office, which is the act constituting the offense, must have been committed at Webb City, Mo., to which place it was addressed, and not within the district of Kansas, where the offense is laid. The deposit of this letter in the mail by Cooke at Bronson, Kan., did not constitute an offense, because Cooke was not a party to the alleged scheme or artifice to defraud. An offense could only have been committed, as respects this letter, by its being taken from the mail at Webb City by one of the defendants, and the fact that it was so taken is not averred. Besides, if the fact had been averred, this count of the indictment would have shown an offense committed within the Western district of Missouri, rather than in the district of Kansas, where the indictment was found.

The same observations may be made with respect to the letter described in the second count of the indictment, namely, the letter written by Davis, and addressed to Boatright, at Webb City, Mo., under date of August 5, 1901, which was deposited in the mail at Blue Mound, Kan., and is the letter upon which the second count of the indictment is founded. This letter was not deposited in the mail by either of the defendants, nor is it alleged that it was taken from the post office by either of the defendants; and if it be assumed, in the absence of an express averment to that effect, that it was received by Boatright from the post office at Webb City, Mo., then the act constituting the offense was committed within the Western district of Missouri. It is clear, we think, that neither the first nor the second count of the indictment, for the reasons above indicated, alleged an offense against the laws of the United States committed within the district of Kansas.

This leaves for consideration the single question whether the third count of the indictment sufficiently states an offense to warrant the removal of the prisoner to a foreign district. The count in question is based on a letter written by one of the defendants, L. B. Gillett, on August 28, 1901, at Neal, Kan., and deposited in the post office at that place, and addressed to Davis at Bronson, Kan., which letter advised Davis that Gillett's foot was healing as fast as it could. It is noticeable that the act constituting the offense, namely, the deposit

of this letter in the post office, though committed in Kansas, was not done by the appellant, Stewart, unless the act of one of the defendants named in the indictment be regarded as the individual act of each. We shall assume, without deciding, that the averment of the indictment showing that the defendants concocted a scheme to defraud is sufficient to establish that the act of either one of the defendants, if done in execution of the scheme, was the act of all, although there is no express allegation in the indictment of a conspiracy among the defendants to commit an offense under section 5480 [U. S. Comp. St. 1901, p. 3696]. Waiving this defect, if it be a defect, it is more important to consider what the scheme or artifice to defraud was, as it is described in the indictment. Certain foot racers, it seems, whose headquarters were at Webb City, Mo., formed a scheme to induce divers and sundry persons to visit Webb City, by entering into communication with them by means of the post-office establishment of the United States. The indictment then avers that the object which they had in view in inducing persons to come to Webb City was to influence them after their arrival to wager, or advance money to be wagered, on "pretended and fraudulent foot races." It is manifest, therefore, that the fraud which was actually practiced consisted of representations made to persons who came to Webb City, and of artifices that were resorted to after their arrival to induce them to wager money, or advance money to be wagered, on fraudulent foot races; but the indictment, in that part which describes the scheme, wholly fails to aver what such representations and artifices were, or were intended to be, when the scheme was formed. Nor does it aver in what respect the foot races were fraudulent, except, in a general way, that they were "prearranged and agreed upon." The sum and substance of the scheme, as alleged in the indictment, is this: That persons were to be induced to come to Webb City, by the use of the mails, in the hope and expectation that after they arrived they could be fleeced by various fraudulent artifices not then conceived or formulated, but which might afterwards be devised to accomplish that end. It is furthermore noteworthy that, as the scheme is described in the indictment, the mails were not the sole means which the defendants intended to employ to induce persons to come to Webb City, for the indictment expressly avers that some of the defendants, namely, Gillett and Stansbury, were to go in person to various places and make the acquaintance of persons who were supposed to be gullible, and, by such fraudulent representations as they saw fit to make, induce them to go to Webb City.

Another observation to be made concerning the indictment is this: That while the fraudulent scheme, as described, was one whereby the mails were to be employed to induce persons to come to Webb City, to be afterwards defrauded, yet the letter which was deposited in the mails by Gillett, on which the third count is founded, does not seem to have been written to accomplish any such purpose, and for that reason it can hardly be said to have been deposited in the mail in execution of such a scheme as the indictment describes. It was written, as it seems, long after Davis had been induced to go to Webb City and after he had wagered his money and sustained all

the loss that he could possibly sustain by reason of the alleged fraudulent scheme.

It should be further observed, concerning the indictment as a whole, that it is needlessly long and involved, and that it contains many redundant and immaterial allegations, which defects, when taken together, render it difficult to construe, and almost unintelligible. If it be an offense under section 5480 [U. S. Comp. St. 1901, p. 3696] to use the mails to induce persons to come to a certain place for the purpose of defrauding them by tricks and artifices to be devised after their arrival, then the indictment now under consideration might and should have been made much shorter, more explicit, and more intelligible. We. are of opinion that it lacks that certainty of averment which should be found in an indictment or information, and that for this reason, if for no other, it ought to be quashed on a motion to that effect. The result is that the order of the district court discharging the writ of habeas corpus is reversed and the cause is remanded to the lower court, with instructions to discharge the appellant.