TRENT et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1916.)

No. 3934.

1. POST OFFICE ⊚⊸35—CRIMINAL OFFENSES—FRAUDULENT USE OF MAILS— ELEMENTS.

Penal Code, § 215 (Comp. St. 1913, § 10385), provides that whoever, having devised any scheme to defraud, shall for the purpose of executing it, or attempting so to do, place or cause to be placed, any letter in any post office, or take or receive therefrom any such letter, shall be punished as therein provided. *Held,* that the fact that a letter defendants were charged with receiving from the post office was mailed by their agent did not prevent their act constituting the offense.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ⊚⊸35.]

2. POST OFFICE ⊚⊸48—FRAUDULENT USE OF MAILS—INDICTMENT—SUFFICIENCY.

An indictment charged the use of the mails for the purpose of executing a scheme to defraud, described therein as embracing the purchase and platting into lots of a track of rough and rocky land, devoid of merchantable timber, unfit for cultivation, and some distance from any railroad, town, or hamlet, the printing and distribution of circulars extolling by indirection the value of the lots and the rare opportunity for investment, and the pretended giving away of certain of the lots for the cost of abstracts of title and deeds to induce immigration. It alleged that the lots were of no value whatever for the purposes represented. *Held,* that the indictment was not defective because of the possibility of a value of the lots for some other purpose, which might save the purchasers from loss, especially as the purchasers were led to believe that they were buying town lots, and not remote little pieces of ground, valueless as such.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. ⊚⊸48.]

3. POST OFFICE ⊚⊸49—FRAUDULENT USE OF MAILS—EVIDENCE.

Where a letter defendants were charged with taking from the post office in aid of such scheme was written to one of the defendants by a local agent, intrusted with the delivery of abstracts and deeds and the collection of the price from the purchasers, and contained a remittance on account of collections, and mentioned other deeds not delivered, and asked for a plat, it did not, as claimed, show on its face that the scheme had been fully executed.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec. Dig. ⊚⊸49.]

4. CRIMINAL LAW ⊚⊸371—EVIDENCE—OTHER OFFENSES.

On a trial for using the mails in aid of a scheme to defraud, evidence of a different, but similar, venture by defendants, was properly received as bearing on the question of fraudulent intent.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. ⊚⊸371.]

5. CRIMINAL LAW ⊚⊸402—EVIDENCE—BEST AND SECONDARY EVIDENCE—LETTERS.

On a trial for taking letters from the post office for the purpose of executing or attempting to execute a scheme to defraud, proved copies of letters mailed to accused were admissible, without otherwise accounting for the absence of the originals.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 887, 888; Dec. Dig. ⊚⊸402.]

⊚⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Post Office** <span>@==35</span>—**Fraudulent Use of Mails—Elements of Offense.**

Penal Code, § 215, provides that whoever, having devised any scheme to defraud, shall for the purpose of executing it, or attempting so to do, place or cause to be placed any letter, etc., in any post office, or shall take or receive any letter therefrom, shall be punished as therein provided. *Held* that, to constitute the offense, it is sufficient that, having devised a scheme to defraud, the mails are actually used in effecting it, and a purpose to use the mails is not an essential element of the scheme devised.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. <span>@==35.</span>]

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

I. E. Trent and another were convicted of fraudulent use of the mails, and they bring error. Affirmed.

Halbert H. McCluer and J. R. Page, both of Kansas City, Mo. (Sparrow & Page, of Kansas City, Mo., on the brief), for plaintiffs in error.

William G. Lynch, Asst. U. S. Atty., of Kansas City, Mo. (Francis M. Wilson, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before HOOK, Circuit Judge, and ELLIOTT and YOUMANS, District Judges.

HOOK, Circuit Judge. Trent and Frad were convicted of fraudulent use of the mails (Penal Code, § 215), as charged in three counts of the indictment. The scheme to defraud may be briefly described as follows:

The accused, operating as the Oakland City Townsite & Emigration Company, obtained title to 420 acres of land in Oklahoma. The land was on the summit of a range of hills called the Poteau Mountains. It was very rough and rocky, and embraced abrupt hills and deep ravines or canyons. It was devoid of merchantable timber, unfit for cultivation, four or five miles from the nearest railroad, and about five miles from the nearest town or hamlet. No buildings were on it, or in the vicinity. At the instance of the accused a surveyor ran the exterior boundaries of the land and then platted it into blocks, lots, streets, and alleys. It was a mere paper plat, prepared in the office of the surveyor, without reference to the lay of the surface of the ground. No survey was made of the blocks, lots, streets, and alleys, and no stakes or other guides were placed to indicate their location. The plat showed 4,243 lots, each with a frontage of 25 feet. The subdivision was called Oakland City. The land was worth from $1 to $2 per acre. The accused caused illustrated circulars to be printed and distributed, extolling by indirection the value of the lots and the rare opportunity for investment, and guaranteeing 10 per cent., inferentially profit, within a year from purchase. The illustrations were of an extensive oil field with derricks and buildings, a large and thrifty orchard, tall growing corn, and a broad level alfalfa field during harvest. There was nothing of the kind on or in the vicinity of the land. The prices of the residence lots were specified in the circular at from

$50 to $250 each; business lots from $450 to $700 each—according to location. They then sent a representative abroad, who addressed meetings in the towns visited, called attention to the circulars, and proceeded as though to give away certain of the lots for the mere cost of abstracts of title and deeds to induce immigration to the pretended Oakland City. Names were selected by lot from the audiences, and in due course abstracts and deeds were sent from the office of the accused in Kansas City, Mo., to local magistrates or other persons of standing, and delivered to the persons selected upon payment of $4.45 per lot. The local agents, who acted innocently, retained 45 cents and remitted to the accused $4 of the proceeds of each sale. Quite a number of lots were disposed of in this way. There was substantial evidence that the lots were practically worthless, and that the accused were engaged in a scheme to defraud the purchasers.

[1-3] In the first count of the indictment the accused were charged with having caused a letter to be mailed, and in the other two counts with having received letters from the mails. The letters were set forth. Various contentions are made as to the sufficiency of the counts and of the evidence. Since the sentence by the court was no more than could have been imposed upon conviction under a single count, consideration may be confined to the third. If no error was committed in respect thereof, the sentence should stand.

It is urged that the letter charged to have been received by the accused was mailed by their agent, and therefore cannot be considered as aiding a scheme to defraud. Of course, the relation of principal and agent cannot help the accused, if the letter is otherwise of the character condemned by the statute. Correspondence of some sort was essential to the consummation of the fraud, and if by mail the law was violated.

It is also claimed that no scheme to defraud is set forth, because the averment that the lots "were of no value whatever for the purposes represented" does not negative a value for some other purpose. The averment in question is but a small part of an elaborate description of the scheme to defraud, and in the circumstances the suggestion of the possibility of a value which might save the purchasers from loss does not merit serious consideration. Besides, the purchasers were led to believe they were buying town lots, not remote little pieces of ground, valueless as such.

Again, it is contended the letter shows on its face the scheme had been fully executed and could not have been in aid of a scheme still afoot. Stewart v. United States, 55 C. C. A. 641, 119 Fed. 89. But the letter shows quite the reverse. It was written to one of the accused by a local agent intrusted with the delivery of abstracts and deeds and the collection of the price from the purchasers, contained a remittance on account of collections, mentioned the number of deeds not delivered, asked for a plat of the city, so called, showing the railroad, etc.

[4-6] The evidence of another, but similar, venture by the accused, was properly received as bearing on the question of fraudulent intent. Exchange Bank v. Moss, 79 C. C. A. 278, 149 Fed. 340. Also the

proved copies of letters mailed to the accused, without otherwise accounting for the abscnce of the originals.    McKnight v. United States, 61 C. C. A. 112, 122 Fed. 926.    There was sufficient proof that the letter in the third count was sent through the mails and was received therefrom by one of the accused, acting for both in the conduct of their common scheme.    By section 215 of the Penal Code a purpose to use the mails ceased to be an essential element of the scheme devised.    It is sufficient that, having devised a scheme to defraud, the mails are actually used in effecting it.    There is no merit in the criticisms of the charge to the jury, nor in various other contentions asserted by the assignments of error.

The sentences are affirmed.