BRYANT et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. March 24, 1919.)

No. 3250.

1. INDICTMENT AND INFORMATION ⬗87(7)—TIME OF OFFENSE—CERTAINTY.
   Indictment for seditious conspiracy, alleging commission of offense "on or about April 5, 1917," is sufficiently definite in respect of time.

2. CRIMINAL LAW ⬗1186(4)—APPEAL—HARMLESS ERROR—INDEFINITENESS OF INDICTMENT.
   Any imperfection in indictment as to definiteness of averment of time of commission of offense is cured by Rev. St. § 1025.(Comp. St. § 1691).

3. INDICTMENT AND INFORMATION ⬗125(5½)—DUPLICITY—CONSPIRACY.
   Indictment charging conspiracy to overthrow and destroy government and to levy war against it is not duplicitous; conspiracy being the gist of the offense, and but one being charged.

4. CRIMINAL LAW ⬗369(2)—EVIDENCE—SHOWING OTHER CRIME.
   Facts material to show the offense in issue are not incompetent, because tending to prove an independent crime.

5. CRIMINAL LAW ⬗824(8)—LIMITING EFFECT OF EVIDENCE—NECESSITY OF REQUEST.
   To put the court in error in not limiting effect of evidence admissible against one of the defendants, request by the others that this be done is necessary.

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. CRIMINAL LAW ☜1169(7)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Admission of declaration of one of defendants tried for conspiracy could not have injured the others, the jury being charged to consider declarations of a defendant only against himself or codefendants who were present and heard them, unless a conspiracy between him and the others was found; and he being acquitted necessarily involving a finding that he did not conspire with the others.

**7. CRIMINAL LAW ☜393(1)—PRIVILEGE OF ACCUSED—SECONDARY EVIDENCE.**

The constitutional guaranty against compelling defendants to be witnesses against themselves does not go to the extent of preventing the government from proving by secondary evidence the contents of a document it cannot produce, because in a defendant's possession.

**8. CRIMINAL LAW ☜402(2)—SECONDARY EVIDENCE—LETTERS IN DEFENDANT'S POSSESSION—DEMAND.**

Tracing letters into defendant's possession authorizes the government to introduce secondary evidence of their contents, without a demand for their production, especially where defendants testify to their destruction.

**9. WITNESSES ☜360—IMPEACHMENT—REBUTTAL.**

In rebuttal of evidence of conviction of government witness, shown by defendants for purpose of impeachment, his pardon is competent.

**10. CRIMINAL LAW ☜1169(6)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

No harm was done by admission of government evidence; all the defendants affected thereby having been acquitted.

**11. CRIMINAL LAW ☜877—INCONSISTENT ACQUITTALS AND CONVICTIONS.**

It is no ground for setting aside a conviction of certain defendants of conspiracy that the evidence may be equally strong against others who were acquitted.

**12. CONSPIRACY ☜43(12)—VARIANCE—NUMBER OF CONSPIRATORS.**

It is only necessary to show conspiracy between two or more of all those charged with conspiracy to warrant conviction of those shown to have conspired.

**13. CONSPIRACY ☜28—ILLEGALITY—INCEPTION BEFORE STATUTE.**

A conspiracy against enforcement of the Draft Law, entered into before its passage, continuing up to and after the time it became effective, then became illegal, even if it was not before.

**14. CONSPIRACY ☜28—TO OVERTHROW GOVERNMENT.**

Though the specific object of the conspirators was to prevent enforcement of the Draft Law, if to attain that object an attempt was to be made, if necessary, to supplant the administration with a provisional government, the conspiracy was to destroy or overthrow the government, in violation of Penal Code, § 6 (Comp. St. § 10170).

**15. CONSPIRACY ☜28—TO LEVY WAR.**

It is a conspiracy to commit treason by levying war against the United States, to conspire to prevent altogether the enforcement of a statute thereof.

**16. CONSPIRACY ☜27—AGAINST GOVERNMENT—OVERT ACT.**

An overt act is not necessary for conviction, under Penal Code, § 6 (Comp. St. § 10170), of conspiracy to destroy or overthrow the government, or to wage war against the United States.

**17. CONSPIRACY ☜47—TO RESIST LAW—GENERALITY—EVIDENCE.**

Relative to necessity of resistance of a law being general, that a conspiracy to resist it shall constitute one to destroy or overthrow the government, or to wage war against the United States, evidence *held* sufficient to show conspiracy of defendants to prevent enforcement of conscription under the Selective Service Act (Comp. St. 1918, §§ 2044a–2044k) all over the United States, not alone in their individual cases.

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

18. CONSPIRACY ⬤⇒48—AGAINST GOVERNMENT—QUESTION FOR JURY.

　　Evidence *held* sufficient to make it a jury question whether defendants conspired to overthrow and destroy the government and to levy war against the United States.

19. CONSPIRACY ⬤⇒43(12)—VARIANCE—OBJECTS OF CONSPIRACY.

　　Though indictment under Penal Code, § 6 (Comp. St. § 10170), charges conspiracy to overthrow and destroy the government and to wage war against the United States, it is enough to establish either.

20. CRIMINAL LAW ⬤⇒377—EVIDENCE—DEFENDANT'S GOOD CHARACTER—LIMIT OF TIME.

　　Proof of good character of defendants as to being law-abiding citizens may be limited to the date of the alleged commission of the offense.

21. COURTS ⬤⇒337—FEDERAL COURTS—FOLLOWING STATE PRACTICE—IN CRIMINAL MATTERS.

　　Federal courts do not follow practice of the courts of the states in which they sit, in criminal matters, and need not permit argument to follow charge in conformity to state practice.

In Error to the District Court of the United States for the Northern District of Texas; George W. Jack, Judge.

G. T. Bryant, Z. L. Risley, and S. J. Powell were convicted of violation of Penal Code, § 6, and they bring error. Affirmed.

See, also, 245 Fed. 682.

William H. Atwell, of Dallas, Tex. (C. Nugent, of Hamlin, Tex., on the brief), for plaintiffs in error.

W. M. Odell, U. S. Atty., of Ft. Worth, Tex. (William E. Allen, Asst. U. S. Atty., of Dallas, Tex., on the brief), for the United States.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The plaintiffs in error were indicted, tried, and convicted in the District Court of the United States for the 'Northern District of Texas for an alleged conspiracy to overthrow, put down, and destroy by force the government of the United States and to levy war against them. The indictment included originally 55 defendants and 8 counts. A verdict of guilty was returned against the 3 plaintiffs in error only of all those originally indicted, and fixed their guilt under the first count of the indictment alone. This count charged the plaintiffs in error with a violation of section 6 of the Penal Code of the United States (Act March 4, 1909, c. 321, 35 Stat. 1089 [Comp. St. § 10170]), by conspiring to overthrow, put down, and destroy by force the government of the United States and to levy war against them. That section provides, among other things, that if two or more persons in any state or territory, or in any place subject to the jurisdiction of the United States, conspire to overthrow, put down, or destroy by force the government of the United States, or to levy war against them, they shall each be fined not more than $5,000, or imprisoned not more than 6 years, or both. No overt act is required to complete the offense created by this section.

The plaintiffs in error were officials of a secret organization called the Farmers' and Laborers' Protective Association, which was or-

ganized in Texas in the year 1914 or 1915, and it was in connection with their activities as officials of this organization that the charges were preferred. The contention of the government is that the plaintiffs in error, together with the defendants jointly indicted, who were acquitted, and others not indicted,, formed a conspiracy to prevent the enforcement of any conscription law that might be passed by Congress, and to overthrow the government of the United States, in the event such a law was enacted and sought by the government to be enforced.

The government contends that, to accomplish the result of the conspiracy, the conspirators created or used the machinery of the organization named and its membership, and that, whatever might be said of the guilt of the members of the association other than the three plaintiffs in error, the evidence, as to them, satisfied the jury, and was sufficient for that purpose, that they did conspire to overthrow the government and levy war against it, if conscription was attempted by it to be enforced; that the plaintiffs in error introduced and urged in the conventions of the association the adoption of resolutions looking to that end; urged the procuring by the members of high-power rifles, in anticipation of forcible resistance to conscription, if it became necessary, and the sending of delegates to the adjoining state of Oklahoma to secure the co-operation of such organizations as the Working Class Union and the Industrial Workers of the World in this intended purpose; that they urged upon the local lodges of their own organization and their members resistance to conscription by force and arms, and the procuring of arms to that end; and that, in obedience to such urging, members of the organization did actually procure rifles, and some few, after so arming themselves, took a position in a canyon, prepared there to offer resistance to the officers of the government, if any attempt to conscript them was made.

The government contends that, but for the timely interruption of the conspiracy by the apprehension of its leaders, actual resistance would have come about. The greater part of the evidence relied upon by the government to establish the conspiracy related to facts which occurred before the passage of the Selective Draft Act.

The defendants, in the District Court, admitting the organization of the Farmers' & Laborers' Protective Association and their membership therein, denied that it or its members entertained any treasonable designs against the United States government, and asserted that its object was to benefit the working and farming classes by the use of co-operative stores and other lawful methods. The trial consumed many weeks, and the evidence is so voluminous as to make a narrative of it, in even a condensed form, impracticable in an opinion. It suffices to say that, at least as to the plaintiffs in error and some of the other defendants, there was substantial evidence that they designed something more than an innocent association of workingmen and farmers to profit by co-operation in lawful ways, and that they combined with the purpose to produce among the members an uprising against any enforcement of any conscription or draft law

that might be enacted, and to prevent such enforcement, by violence, if necessary.

[1-3] The plaintiffs in error question the sufficiency of the indictment, under which they were convicted, upon two grounds. The first count of the indictment, on which alone a conviction was had, is only to be considered. It is contended that the averment of the date of the commission of the offense is not alleged with sufficient certainty in this count. The averment is that it was committed "on or about the 5th day of April 1917." The indictment was sufficiently definite in respect of time, and any imperfection in this respect is cured by section 1025, Revised Statutes (Comp. St. § 1691). United States v. McKinley (C. C.) 127 Fed. 168; United States v. Lair, 195 Fed. 47, 115 C. C. A. 49; United States v. Aviles (D. C.) 222 Fed. 474.

The plaintiffs in error further criticize the first count of the indictment upon the ground that it is duplicitous, in charging separate offenses in the same count. The count charges but one conspiracy, though its purposes were more than one. Conceding that to overthrow and destroy the government is a separate offense from levying war against it, it does not follow that a conspiracy to do both constitutes more than one offense. The conspiracy is the gist of the offense, and but one is charged. The offense itself is therefore single. John Gund Brewing Co. v. United States, 206 Fed. 386, 124 C. C. A. 268, and cases cited; United States v. Aczel (D. C.) 219 Fed. 917.

[4] The plaintiffs in error complain of the admission, over their objection, of evidence tending to show facts which would constitute crimes against the state, or the United Sates, different from the accusation for which they were being tried. It is true that the law does not permit one crime to be proved in order to raise the probability that another has been committed. If, however, the facts which tend to show the independent crime are also material to show the offense being tried, they do not become incompetent because they tend to prove the commission of an independent crime. The evidence objected to was pertinent to establish the existence of the conspiracy relied upon by the government, and was properly admitted. The court instructed the jury as to the only legitimate effect of the evidence. Jones v. United States, 179 Fed. 584, 103 C. C. A. 142.

[5, 6] The plaintiffs in error complain of the admission in evidence of an alleged statement testified to by the government witness Williams to have been made by their codefendant, Bergfeldt, who was acquitted, that he had papers in his possession that might put him in the penitentiary if it were known. The admissibility of this statement, as against the defendant who made it, is clear. If admissible as to Bergfeldt, the other defendants should have requested that its effect be limited to Bergfeldt, in order to put the court in error for not so limiting it. However, Bergfeldt was acquitted, and, in order to reach that result, the jury must have found that he did not conspire with any of the plaintiffs in error, for the indictment charged no other offense against him. The court did charge the jury that they should consider declarations of defendants only against themselves, or those of their codefendants who were shown to have been present and to

have heard them, unless they first found a conspiracy to have existed between the defendant making the declaration and those against whom it was asked to be considered. The jury, therefore, as they were instructed, must have considered the statement objected to against Bergfeldt only, since they found the plaintiffs in error had not conspired with him, by their verdict of acquittal. Its admission, therefore, worked no injury to the plaintiffs in error.

[7, 8] The plaintiffs in error complain that they were compelled to be witnesses against themselves, in violation of their constitutional right. The contention is based upon the action of the District Judge in permitting the government to trace certain letters and documents to the possession of certain of the defendants on trial, and then permitting secondary and oral evidence of their contents to be introduced. The constitutional guaranty does not go to the extent of preventing the government from proving by secondary evidence the contents of a document it cannot produce because it is in the possession of a defendant. That fact authorizes the introduction of secondary evidence, and, to lay a predicate for its introduction, the government must necessarily establish to the court's satisfaction the possession of the defendant. No demand for the production of any document was made upon any defendant in the presence of the jury. McKnight v. United States, 122 Fed. 926, 61 C. C. A. 112; Heinze v. United States, 181 Fed. 322, 104 C. C. A. 510; Trent v. United States, 228 Fed. 648, 143 C. C. A. 170; Watlington v. United States, 233 Fed. 247, 147 C. C. A. 253. The record also shows that the defendants concerned, testifying in their own behalf, proved the destruction of all the documents, except a letter, which their attorney stated was in his files, and which he stated he would produce, but was unable thereafter to locate. The District Judge also instructed the jury to disregard the evidence tracing the documents to the possession of defendants. The plaintiffs in error's rights were fully protected.

[9, 10] The plaintiffs in error also complain of the admission of the evidence of a pardon granted to the government witness Garner by the Governor of Texas. The defendants sought to impeach the evidence of Garner by showing his conviction and sentence to the state penitentiary on a charge of robbery. In explanation the witness Garner testified, without objection, to the facts attending the securing of his pardon. The objection was made to the pardon itself. We think it was competent in rebuttal of the evidence of conviction. As the defendants who were alone affected by Garner's evidence were all acquitted, no harm was done by its admission, in any event.

The plaintiffs in error demurred to the government's evidence, and also requested an instruction directing their acquittal, upon the close of all the evidence. The evidence is too extensive to abstract or analyze. There was evidence sufficient to justify the jury in determining that the plaintiffs in error, together with other of the defendants, not convicted, but apparently no less guilty, were active in their opposition to the conscription of citizens of the United States to take part in foreign wars. This opposition began in the organization of which plaintiffs in error were officers prior to the date of what is

called the first Cisco convention in February, 1917. At that convention a resolution, called the Haskell county resolution, was passed. In its original shape it contained these words:

"And ·we oppose the United States government in the prosecution of a foreign war."

Upon the suggestion that this might be treasonable, it was amended, after adoption, by substituting for the words "United States government" the words "capitalistic classes." This resolution had been previously adopted in its original form by local and county lodges in Haskell county. In May, 1917, a second state convention of the order was called and assembled at Cisco. One of the purposes for which this convention was called was to discuss the question of conscription. At this convention a committee on resolutions was selected by the plaintiff in error Risley, who was president of the order. It was open to inference that a majority of this committee were known to Risley to be men of radical views. The evidence tended to show that Risley suggested to the committee that the radical report be made the majority report, and it was so presented to the convention. It is true that Risley testifies his purpose in making the suggestion was to procure the defeat of the majority report on the floor of the convention. His good faith in this respect was for the jury, and it probably decided that question adversely to him. The minority report was the one adopted by the convention. It is a matter of fair inference, however, that the conservative action of the convention was distasteful 'to the leaders of the order, and that' they did not acquiesce in it, but immediately took steps to continue the agitation for radical and violent measures against conscription. The first was the selection of the radical majority of the resolutions committee as delegates to go to Oklahoma to seek the co-operation of the radical organizations there operating.

The failure of the radical majority resolution of adoption by the convention would indicate that the order was not willing to adopt violent measures, and if the conspiracy charged had been coextensive with the membership of the order, or a majority thereof, it might have been fatal to the government's contention. The conspiracy charged was not necessarily so broad. It might include any part of the membership, though less than a controlling majority. The jury acquitted all but the three plaintiffs in error, and, by so doing, found against the conspiracy, so far as its scope included the order as an organization, only implicating its officers. The fair inference to be drawn from the verdict is that the jury believed that the plaintiffs in error had formed an inner conspiracy, the purpose of which was to use the machinery of the order to resist any draft law that might be enacted, even to the extent of overthrowing the government, if necessary, and to accomplish this by overcoming the conservatism of the majority and committing them to their own views. A tendency of the evidence, if believed, would authorize a finding that certain of the members of the organization, including plaintiffs in error, were not dissuaded from such action by the adverse vote on the majority resolution, but agreed

to continue agitation to accomplish, through the organization, violent opposition to the government, in the event it should attempt to enforce conscription. The evidence tends to show that these members considered that such action was to be deferred only until co-operation with other kindred orders could be obtained, and their power so strengthened. The report of the delegates, on their return from Oklahoma, of the impracticability of such co-operation, was not accepted as final, since, after their return and report, the letter to the local lodges signed by the plaintiff in error Powell clearly indicates the continuance of the opposition to conscription, even up to the day of the enactment of the Selective Draft Law.

The evidence also tends to show that, after the adjournment of the Cisco convention in May, forcible opposition to conscription continued to be advocated in the locals; that high-power guns were procured by members in response to urging by leaders, to be used in resisting conscription; and that certain members, armed to resist, left their homes and took position in a canyon, to resist the conscription officers. The record tends to show that the conspiracy continued to progress until it was interrupted by the indictment and arrest of certain of the defendants, on and after May 18, 1917, the date of the enactment of the selective draft act (Act May 18, 1917, c. 15, 40 Stat. 76 [Comp. St. 1918, §§ 2044a–2044k]). There is evidence, aside from the official connection of the three plaintiffs in error, tending to connect them with such an inner conspiracy. Powell's letter to the locals, dated May 16 or 18, attached to which was a petition in opposition to conscription, to be signed by the members, is some evidence of his connection, and that it continued up to the date of the enactment of the law. Risley's conduct, as presiding officer, at the second Cisco convention, was, of itself, evidence tending to show his connection, if the jury believed from it that he then advocated the adoption of the majority resolution, and it was open to them to so find. Bryant's utterances in the locals in the course of his position as organizer was evidence of his connection, the sufficiency of which was for the jury to determine. The record contains other evidence to the same effect.

[11, 12] The fact, if it be a fact, that codefendants of the plaintiffs in error, against whom the evidence was equally persuasive, were acquitted by the jury, is no reason for setting aside the judgment of conviction against plaintiffs in error. It was necessary for the government to go no further than to establish a conspiracy as against any two or more of the defendants on trial. The organization was not on trial, but certain of its members, and a conspiracy of the kind charged, proven between any two of its members, as individuals, answered the requisition of the indictment.

The plaintiffs in error contend that a conspiracy to resist the enforcement of anticipated conscription was not forbidden by law: (1) Because the law was not in effect when the conspiracy was formed; (2) because it was not shown by the evidence to be a conspiracy to levy war against or overthrow the government of the United States, as charged in the first count of the indictment; and (3) because the

257 F.—25

evidence showed merely individual resistance, and not a general plan to prevent the enforcement of the draft law.

[13] 1. We are not prepared to say that a conspiracy to prevent the general enforcement of a law, formed in advance of its enactment, cannot become illegal unless and until it is enacted. The threat implied in the conspiracy may operate to prevent the enactment of the law, and so interfere with an operation of the government as much as would an attempt to prevent its enforcement when enacted. The purposes of this case do not require a decision of that question. The Selective Draft Law was enacted. A conspiracy aimed at its enforcement, though entered into before its passage, would become illegal, upon its passage, if it was not before so. Otherwise the government would have no redress against preparation by force and arms to resist the enforcement of a proposed law until after its passage, when it might well be too late. Unless such a conspiracy is shown to have been abandoned before the law against which it is aimed takes effect, it would be none the less punishable because entered into in advance of the passage of the law. In this case the jury might well have inferred from the evidence that the conspiracy, though formed before May 18, 1917, the date of the enactment of the Selective Service Law, continued up to and after that date, and was only interrupted then by the interposition of the government and the arrest and indictment of the alleged conspirators.

[14-16] 2. The plaintiffs in error contend that, if a conspiracy is proven by the evidence in the record, it is not a conspiracy to levy war, or to destroy or overthrow the government, and so not the conspiracy charged in the first count of the indictment, on which alone conviction was had. The motive of the conspirators does not necessarily determine the character of the conspiracy. Their object may have been to prevent the enforcement of a specific law. If, to attain that object, they conspire to overthrow or destroy the government, as a means to that end, the conspiracy is one to destroy or overthrow the government. There is evidence in the record tending to show that, to defeat conscription, if necessary, an attempt was to be made to supplant the administration by a provisional government. If the jury so found, a conspiracy to destroy or overthrow the government would be proven. The evidence also tended to show that there was a conspiracy to prevent the enforcement of conscription and the act of Congress providing for the selective draft. A conspiracy to prevent altogether the enforcement of a statute of the United States has been held to be a conspiracy to commit treason by levying war against the United States. In the case of United States v. Fries, Fed. Cas. No. 5,127, Circuit Judge Chase, speaking for the Circuit Court, said, in charging the jury:

"The court are of opinion that, if a body of people conspire and meditate an insurrection, to resist or oppose the execution of any statute of the United States by force, they are only guilty of a high misdemeanor, but if they proceed to carry such intention into execution by force, they are guilty of the treason of levying war; and the quantum of the force employed neither lessens nor increases the crime—whether by 100 or by 1,000 persons is wholly immaterial."

This extract was quoted with apparent approval by Chief Justice Marshall in the opinion of the Supreme Court in the case of Ex parte Bollman, 4 Cranch, 75, 127, 2 L. Ed. 554. In the case of United States v. Mitchell, 2 Dall. 348, 355, 1 L. Ed. 410, Justice Paterson, in charging the jury, said:

"The first question to be considered is: What was the general object of the insurrection? If its object was to suppress the excise offices, and to prevent the execution of an act of Congress, by force and intimidation, the offense, in legal estimation, is high treason; it is an usurpation of the authority of government; it is high treason, by levying of war."

In charging the grand jury in the Fries Case, Circuit Judge Iredell defined treason by levying war as follows:

"But I think I am warranted in saying, that if, in the case of the insurgents who may come under your consideration, the intention was to prevent by force of arms the execution of any act of the Congress of the United States altogether (as, for instance, the land tax act, the object of their opposition), any forcible opposition calculated to carry that intention into effect was a levying of war against the United States, and of course an act of treason."

The opinions of Judges Paterson and Iredell are referred to approvingly by Chief Justice Marshall in the case of Ex parte Bollman. It is true that, in order to constitute treason, as distinguished from a treasonable conspiracy, an actual assemblage of men in force is necessary, as was held in Ex parte Bollman, supra, and in United States v. Burr, 25 Fed. Cas. 162. The plaintiffs in error were, however, indicted and convicted for a conspiracy under a statute not even requiring proof of an overt act in order to convict.

[17-19] 3. It is also true that the cases cited hold that the resistance or the conspiracy to resist the enforcement of the law must be general, and not limited to a particular instance, or against a particular officer, or from a private or personal motive. There is evidence, however, in the record, which, if believed by the jury, was sufficient to show a conspiracy on the part of the plaintiffs in error to prevent the enforcement of conscription under the Selective Service Act all over the United States, not alone in their individual cases.

We think the record contains evidence, the sufficiency of which was for the jury to determine, that the plaintiffs in error conspired to overthrow and destroy the government of the United States and to levy war against it, as charged in the first count of the indictment. The government was not required to establish both, though both were averred. It established the conspiracy, as alleged, by proof of either.

[20] The plaintiffs in error complain because evidence as to the good character of some of them was limited to the finding of the indictment. Proof of good character as to being law-abiding citizens might properly have been limited to the date of the commission of the offense. 16 Corpus Juris, 581. No restriction, as to date, was placed upon evidence of reputation for truth and veracity of those defendants who testified in their own behalf.

The District Judge fully and fairly charged as to the effect of evidence of good character, and was justified in refusing the requested instructions on this subject-matter for that reason.

[21] The federal courts do not follow the practice of the state courts of the states in which they sit, in criminal matters, and there was no obligation to permit argument to follow the court's charge in conformity with the Texas practice.

The special instructions requested by the defendants have been examined. They were either covered by the court's general charge, or properly refused, because not asserting correct propositions of law, or were not applicable to the facts of the case. The questions presented by the motion in arrest of judgment have been heretofore considered.

We conclude that there is no reversible error in the record, and the judgment of the District Court is affirmed.