### NEWINGHAM et al. v. UNITED STATES.*

(Circuit Court of Appeals, Third Circuit. February 27, 1925. Rehearing Denied April 11, 1925.)

No. 3279.

1. Post office ⊂⇒35—Letters held mailed in execution of scheme to defraud under statute.

Where fraudulent scheme contemplated an initial payment of money by victim and subsequent monthly payments in smaller amounts, held, letters mailed to victim after initial payment, for purpose of lulling him into sense of security and to encourage monthly payments, were mailed in execution of general scheme, so as to constitute violation of Criminal Code, § 215 (Comp. St. § 10385).

2. Post office ⊂⇒35—Offense of using mails to defraud under statute is complete on such use, regardless of whether use of mails was part of scheme.

Offense of using mails for purpose of execution of scheme to defraud, defined by Criminal Code, § 215 (Comp. St. § 10385), is complete when, a scheme to defraud being present, an attempt to execute it by use of mails is made, regardless of whether use of mails was or was not part of scheme, and regardless of whether letters were effective.

3. Post office ⊂⇒49—Letters indicating use of mails in furtherance of scheme to defraud are admissible in prosecution therefor.

In prosecution under Criminal Code, § 215 (Comp. St. § 10385), for use of mails in execution of scheme to defraud, letters showing attempt to execute scheme by use of mails are admissible.

4. Post office ⊂⇒50—Instruction as to effect of time when letters were mailed in prosecution for use of mails to defraud held correct.

In prosecution under indictment containing 13 counts for violation of Criminal Code, § 215 (Comp. St. § 10385), prohibiting use of mails in execution of scheme to defraud, where scheme involved contemplated an initial payment by victim and subsequent lesser monthly payments, instruction that it was of no matter whether letters written after receipt of initial payment were mailed before or after money was paid held correct as applicable to monthly payments.

*Certiorari denied 45 S. Ct. 638, 69 L. Ed. ——.

**5. Criminal law ⟨⟩394—Individual defendants may not complain of alleged unlawful search and seizure of papers of corporation.**

Individual defendants, charged with use of mails in furtherance of scheme to defraud, in violation of Criminal Code, § 215 (Comp. St. § 10385), may not complain of irregularities or infirmities in search and seizure of papers of corporation under name of which they operated.

**6. Searches and seizures ⟨⟩7—Papers held abandoned, and search lawful.**

Where papers used against defendants had been taken from desk and files sold under landlord's warrant, with permission of purchaser, *held*, that there was an abandonment of such papers, and search and seizure was lawful, under Const. Amend. 4.

In Error to the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

W. H. L. Newingham and others were convicted of use of mails in furtherance of scheme to defraud, and they bring error. Affirmed.

U. G. Vogan, John M. Henry, and W. A. Griffith, all of Pittsburgh, Pa., for plaintiffs in error.

Walter Lyon, U. S. Atty., and Warren H. Van Kirk, Asst. U. S. Atty., both of Pittsburgh, Pa.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge. The plaintiffs in error, defendants below, were tried and convicted on an indictment containing 14 counts, of which 13 were for offenses violative of section 215 of the Criminal Code (Comp. St. § 10385). This section provides: "Whoever, having devised * * * any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses * * * shall, for the purpose of executing such scheme or artifice * * * place, or cause to be placed, any letter * * * in any post office * * * of the United States, * * * * " shall be guilty of a crime.

The fourteenth count was for conspiracy under section 37 of the Criminal Code (Comp. St. § 10201) to commit the offense denounced by the quoted section.

The learned trial judge made it clear in his charge that, as applied to this case, there are two elements in the crime defined by section 215; one, devising a scheme to defraud, the other, mailing a letter "for the purpose of executing such scheme." Here there is no doubt of the existence of the scheme. The defendants admit it. The question is whether there was evidence for the jury to find that the letters were mailed "for the purpose of executing such scheme."

The defendants contend that the evidence shows the scheme was wholly executed before the letters were mailed and under Stewart v. United States, 119 F. 89, 55 C. C. A. 641, and United States v. Dale (D. C.) 230 F. 750, it follows that the letters could not have been mailed for the purpose of executing it. Of course if the evidence shows this, the defendants did not commit the crime, no matter how fraudulent the scheme, and their conviction cannot be sustained. But the answer to the question whether the letters were mailed for that purpose depends (in this case) upon the character of the scheme. Shortly stated, it was as follows:

McCoy was president and Newingham was secretary of the Safink Manufacturing Company, a corporation ostensibly organized for the lawful manufacture and sale of acid-proof ink known as "Safink," a corruption of the words "safe" and "ink." The defendants advertised for christian young men to become associated with them in the business. When a young man would respond (as many did) he would be told that the company would give him an exclusive right or license to sell its ink in a given territory for the sum of $2,500; that the company would supply him with a partner who would pay half of this sum and when the money was paid by the newly formed partnership it would ship them a quantity of ink with which to embark upon the enterprise. The partner supplied by the defendants was always a man involved in the scheme. The "victim," as he became known at the trial, would pay his $1,250 and the defendants would walk away with it. If this were the whole story, the defendants did not violate the statute providing against the fraudulent use of the mails. But after the transaction had been completed by the formal execution of a contract between the victim and his bogus partner on the one hand and the corporation on the other, and after the victim had parted with his money, the defendants in each instance mailed a letter to the victim telling him of the good business the corporation was doing and encouraging him in the sale of ink. If this were all that the evidence shows, then again we agree with the defendants that such a letter was not mailed in furtherance of the scheme to defraud and, in consequence, they committed no offense against the statute by mailing it. But this is not the whole story.

[1-3] The contract shows two things with respect to money: First, that the victim should pay an initial sum; and, next, that he should make payments in the future. It says: "In addition thereto (that is in addition to the first purchase of ink), the agent (the partners) agrees to purchase from the company not less than 200 quart quantities (10 pounds), on the 15th day of each and every month thereafter, commencing on the 15th day of August, 1923, as long as this contract continues in force." The contract by its terms provides that it shall continue in force "as long as the agent shall continue to make specified monthly purchases." It is evident from these provisions of the contract, which is the very heart of the artifice, that the scheme contemplated fraudulently procuring an initial payment and thereafter fraudulently procuring monthly payments. In every instance, however, it was after the initial payment had been made and before monthly payments were to begin that the letter was mailed. Although the scheme collapsed before monthly payments were ever made, we think the trial judge construed the transaction correctly and properly charged the jury that they might find that these letters were mailed in order to lull the victims into a sense of security and therefore they were mailed for the purpose of executing the general scheme. The fact that the victims did not make monthly payments does not alter the character of the scheme nor does it relieve the defendants of liability under section 215 for using the mails in their effort to carry it that far. The gist of the offense is mailing the letters. United States v. Young (D. C.) 215 F. 267; Beldin v. United States, 223 F. 726, 139 C. C. A. 256; Savage v. United States (C. C. A.) 270 F. 14. A scheme to defraud being present, the offense is complete when an attempt is made to execute it by the use of the mails, wholly without regard to whether use of the mails was or was not a part of the scheme, Humes v. United States, 182 F. 485, 105 C. C. A. 158; Trent v. United States, 228 F. 648, 143 C. C. A. 170, and also without regard to whether the letters mailed in furtherance of the scheme were in themselves effective in carrying it out. Letters indicating such a tendency are properly admissible in evidence to prove the purpose. Freeman v. United States, 244 F. 1, 156 C. C. A. 429.

We are of opinion that the contract was evidence of a continuing scheme and that the letters were such as to warrant the finding by the jury that they were mailed for the purpose of executing the part of the scheme which remained to be completed in the future and that, accordingly, the conviction if not otherwise invalid must be sustained.

[4] Exception was made to certain of the court's instructions to the jury. The only one that calls for discussion is the one in which the court said to the jury:

"There are, in other words, thirteen schemes or thirteen plans in this case, each one complete in itself. If there was a general conspiracy to defraud, as defined by the statute, by means of securing this partner or these partners, and carrying on that general plan or scheme to defraud *over a period of time* and as part of it—if the parties intended to mail letters to lull the intended victim into a sense of security, then it was of no matter whether the letters were mailed before or after the money was paid. It was a part of the general scheme."

Counsel say that the record does not correctly quote the Judge's words and that it should read:

"There are *not,* in other words, thirteen schemes or thirteen plans in this case, each complete in itself," etc.

If the instruction omitted the word "not," we are of opinion that it was right for there were thirteen schemes affecting that number of transactions pleaded thirteen times by thirteen counts. But even if the word "not" were in the instruction, any error involved (which we doubt) was not checked by a valid exception. Whether the learned trial judge had in mind the initial payments or the monthly payments when he said "it was of no matter whether the letters were mailed before or after the money was paid" we cannot say. The instruction was, however, correct, as it was applicable to monthly payments intended by the contract to be made at times subsequent to the mailing of the letters.

The conspiracy count charged conspiracy to mail a letter. Whether the evidence supports this count depends upon the same questions raised, and now decided, in respect to the other counts.

The remaining question arose on the admissibility of evidence procured, as the defendants maintain, in violation of the right against unlawful searches and seizures guaranteed them by the Fourth Amendment to the Constitution.

[5, 6] This evidence consisted of letters and papers, some of which belonged to the Safink Manufacturing Company and others to the defendants. The chattels of the corporation had been sold under a landlord's warrant. Among these was a desk sold to

the landlord and a filing case sold to a Mr. Woods. A post office inspector, under authority of a search warrant, called upon the purchasers who permitted him to examine the desk and filing case in their possession and carry away such papers as he found. Some of these were offered and admitted in evidence and are now the object of the defendants' attack. First, discriminating between papers which belonged to the corporation and papers which belonged to the defendants, we hold, under our ruling in Guckenheimer & Brothers Company v. United States, 3 F.(2d) 786, that the defendants cannot avail themselves of irregularities or infirmities in a search and seizure of papers belonging to another. As to their own papers, it is clear that the defendants had abandoned them and that they were not obtained by an invasion of their homes or of their office and therefore they were not obtained by a search and seizure of the character forbidden by the constitutional amendment.

Having given full consideration to the several aspects of the case discussed by the defendants and not here reviewed, and having discovered no error in the proceedings below, we are of opinion that the judgment must be affirmed.