2 U.S. 348 (____)
2 Dall. 348
The UNITED STATES
versus
MITCHELL.
Supreme Court of United States.

*355 The charge of THE COURT was delivered to the Jury in substance as follows.
PATTERSON, Justice.
The first question to be considered is, what was the general object of the insurrection? If its object was to suppress the excise offices, and to prevent the execution of an act of Congress, by force and intimidation, the offence, in legal estimation, is High Treason; it is an usurpation of the authority of government; it is High Treason by levying of war. Taking the testimony in a rational and connected point of view, this was the object: It was of a general nature, and of national concern.
Let us attend, for a moment, to the evidence. With what view was the attack made on General Neville's house? Was it to gratify a spirit of revenge against him as a private citizen, as an individual? No:  as a private citizen he had been highly respected and beloved; it was only by becoming a public officer, that he became obnoxious; and it was on account of his holding the excise office alone, that his house had been assailed, and his person endangered. On the first day of attack, the insurgents were repulsed; but they rallied, returned with greater force, and fatally succeeded in the second attempt. They were arrayed in a military manner; they affected the military forms of negociation by a flag; they pretended no personal hostility to General Neville; but they insisted on the surrender of his commission. Can there be a doubt, then, that the object of the insurrection was of a general and public nature?
The second question to be considered, is  how far was the prisoner traiterously connected with the insurgents? It is proved by four witnesses, that he was at Couche's Fort, at a great distance from his own home, and that he was armed. One *356 witness proves, positively, that he was at the burning of Gen. Neville's house; and another says, "it runs in his head, that he, also, saw the prisoner there." On this state of the facts, a difficulty has been suggested. It is said, that no act of Treason was committed at Couche's Fort; and that, however treasonable the proceedings at Gen. Neville's may have been, there are not two witnesses, who prove that the prisoner was there. Of the overt-act of Treason, there must, undoubtedly, be proof by two witnesses; and, it is equally clear, that the intention and the act, the will and the deed, must concur; for, a bare conspiracy is not Treason. But let us consider the prisoner's conduct in a regular and connected course. He is proved, by a competent number of witnesses, to have been at Couche's Fort. At Couche's Fort the conspiracy was formed, for attacking Gen. Neville's house; and the prisoner was actually passed on the march thither. Now, in Foster 213. the very act of marching is considered as carrying the traiterous intention into effect; and the Jury (who will sometimes find the most positive testimony, contradicted by circumstances, which carry irresistable conviction to the mind) will consider how far this aids the doubtful language of the second witness, even as to the fact of the prisoner's being at Gen. Neville's house.
On the personal motives and conduct of the prisoner, it would be superfluous to make a particular commentary. He was armed, he was a volunteer, he was a party to the various consultations of the insurgents; and in every scene of the insurrection, from the assembly at Couche's Fort to the day prescribed for submission to the government, he makes a conspicuous appearance. His attendance, armed, at Bradock's field, would of itself amount to Treason, if his design was treasonable.
Upon the whole, whether the conspiracy at Couche's Fort may of itself be deemed Treason; or, the conspiracy there, and the proceedings at Gen. Neville's house, are considered as one act, (which is, perhaps, the true light to view the subject in) the prisoner must be pronounced guilty. The consequences are not to weigh with the Jury:  it is their province to do justice; the attribute of mercy is placed by our Constitution in other hands.
Verdict  GUILTY.[*]
NOTES
[*] The prisoner was pardoned; and the President afterwards granted a general amnesty to all the insurgents, who were not objects of depending prosecutions.