KELLY, C.J.
(dissenting). Defendant was accused of setting fire to his house and charged with arson of a dwelling house and burning insured property. The question presented is whether evidence of four fires with which defendant had some connection in the preceding 12 years was properly admitted at trial under the doctrine of chances to prove lack of accident.
I believe that the doctrine does not apply in this case because of the dissimilarities between the previous fires and the charged fire. Furthermore, even if the previous fires were relevant, any probative value they have is substantially outweighed by the danger of unfair prejudice. Hence, the evidence is inadmissible under MRE 403. For those reasons, I respectfully dissent.
PACTS AND PROCEDURAL HISTORY
After a seven-day trial, a jury convicted defendant of arson of a dwelling house, MCL 750.72, and burning insured property, MCL 750.75. The convictions arose from a fire at defendant’s house on the afternoon of November 13, 2006. At the time of the fire, defendant was at his brother’s house nearby. However, he had recently been at his own house and was the only person there that afternoon.
*631 Michigan State Police Detective Sergeant Michael Waite, an expert in the cause and origin of fires, investigated and concluded that the fire originated from a love seat in the living room. Testing failed to reveal the presence of an accelerant. But Waite believed that charring on the front part of the love seat and the speed with which the fire spread were consistent with the use of an accelerant. After ruling out possible accidental causes of the fire, Waite concluded that it was started by an intentional act.
During trial, the prosecution presented evidence that defendant and his family were having financial difficulties at the time of the fire. They were in arrears on their mortgage payments and several utility bills. The prosecution also presented evidence of previous fires involving property that defendant had at one time owned or possessed. It is this evidence that is at issue here.
The first fire occurred in 1994, 12 years earlier. Defendant’s Ford Ranger caught fire while he and friends were ice fishing. The truck was insured under defendant’s father’s name, but defendant was paying for it. Defendant continued to make payments on the truck loan afterwards because the insurance coverage did not extend to the entire amount owing on the vehicle.
The second fire took place in 2001. At that time, defendant owned an older van that had many mechanical problems. The van caught on fire and the fire spread to defendant’s mobile home. The fire chief for Bruce Township determined that the fire started under the hood of the van. There was only a small insurance payment for the damage to the van, and the damage to defendant’s home was not covered by insurance. The fire chief found nothing suspicious about the fire.
*632 Another fire occurred when, in 2003, a van owned by defendant’s employer caught on fire. The fire was determined to have started in the engine compartment. Defendant received no insurance proceeds because he did not own the van. He lost all his personal tools used for his employment.
The last fire occurred in 2006 at defendant’s residence. It allegedly started when one of defendant’s roommates left a blanket on top of a kerosene heater. The fire department was not called, and the fire caused only smoke damage. Defendant received insurance benefits for this fire.[1]
The prosecutor sought to introduce evidence of the 2006 fire at defendant’s home, the 2001 vehicle fire that spread to defendant’s mobile home, and the 1994 truck fire. The purpose was to demonstrate a pattern of behavior, motive, scheme, plan, and system in causing the fires.
The trial court ruled that the evidence could be admitted under MRE 404(b)(1) for these purposes, as well as to prove lack of accident. Under the same rule, it also allowed the prosecutor to introduce evidence of the fire involving defendant’s employer’s vehicle. In addition, the court allowed the jury to consider the evidence for other purposes. It instructed the jury that the evidence might be considered to determine whether defendant (1) had a reason to commit the charged crime, (2) specifically in *633 tended to bum his residence, (3) acted purposefully and not by accident or mistake, or because he misjudged the situation, and (4) had a plan, system, or characteristic scheme that he used before or after. Thus, the court allowed consideration of the other fires as proof of motive, intent, absence of mistake or accident, a scheme, plan, or system in doing an act, and identity.
Defendant was convicted as charged. He was sentenced to concurrent prison terms of 3 to 20 years for the arson of a dwelling house conviction and 1 to 10 years for the burning of insured property conviction.
On appeal, the Court of Appeals held that the trial court abused its discretion by admitting the other acts evidence of the four fires with which defendant was associated.[2] It agreed with defendant that the prosecutor had not established its relevance. The Court of Appeals considered and rejected each of the prosecutor’s proffered bases for admission of the evidence under MRE 404(b)(1). It also concluded that evidence of the other fires was inadmissible under MRE 403 because they were minimally probative and the danger of unfair prejudice substantially outweighed their probative value. After determining that the error in admitting the evidence was outcome determinative, it reversed the convictions and remanded the case for a new trial.
On the prosecution’s application, this Court granted leave to appeal and directed the parties to address “whether evidence provided under the ‘doctrine of chances’ may be used to establish that a fire did not have a natural or accidental cause, and whether more than the mere occurrence of other fires involving the *634 defendant’s property is necessary for admission of such evidence.”[3]
MRE 404(b) — THE ADMISSION OF OTHER ACTS EVIDENCE
The decision to admit or exclude evidence is within the trial court’s discretion and will not be disturbed absent an abuse of that discretion. An abuse occurs if the trial court chooses an outcome falling outside the range of principled outcomes.[4] Preliminary questions of law, such as whether a rule of evidence precludes admissibility, are reviewed de novo.[5]
The admission of evidence under MRE 404(b) involves a preliminary question of law. It is a codification of the fundamental principle that courts and juries try cases, not persons; thus, in reaching its verdict, a jury may consider only evidence of the events in question, not the defendant’s prior acts.[6] A jury should not convict a defendant inferentially on the basis of his or her bad character. Rather, it should determine whether he or she is guilty of the crime charged.[7]
MRE 404(B)(1) permits the admission of evidence of other crimes, wrongs, or acts if (1) offered for a proper purpose, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice under MRE 403.[8] The prosecution must “weave a logical thread linking the prior act” to a proper, noncharacter purpose.[9]
*635 The prosecutor argues that, in this case, evidence of the previous fires is admissible under what is known as the “doctrine of chances.” Accordingly, a discussion of that doctrine is warranted.
THE DOCTRINE OF CHANCES
The doctrine of chances is used to establish the relevancy of certain types of past acts evidence and to avoid the prohibition against character evidence.[10] Basically, it states that, when someone suffers a specific type of accident with extraordinary frequency, it is objectively probable that one or more of the incidents were not accidents. A treatise describes it as follows:
Based on ordinary common sense and mundane human experience it is unlikely that a large number of similar accidents will befall the same victim in a short period of time. Considered in isolation, the charged fire . .. may be easily explicable as an accident. However, when all similar incidents are considered collectively or in the aggregate, they amount to an extraordinary coincidence; and the doctrine of chances can create an inference of human design. The recurrence of similar incidents incrementally reduces the possibility of accident. The improbability of a coincidence of act creates an objective probability of an actus reus.[11]
The doctrine of chances has been traced to the 1915 English case of Rex v Smith[12] The defendant, Smith, *636 married three women between 1912 and 1914. After each marriage, he purchased an insurance policy on the life of his new wife and convinced her to sign a will making him her beneficiary. Each of the three women was later found dead in her bath by drowning. At Smith’s trial, the prosecution was allowed to introduce evidence of all three deaths over the defendant’s objection that the evidence was nothing more than evidence of his bad character.
The appellate court held that the evidence had been properly admitted. In affirming the conviction, it “focused on the objective improbability of so many similar accidents befalling Smith. Either Smith was one of the unluckiest persons alive, or one or some of the deaths in question were the product of an actus reus.”[13]
The seminal American case that accepted the doctrine of chances as a noncharacter basis for admitting other acts evidence is a 1973 case of the United States Court of Appeals for the Fourth Circuit, United States v Woods.[14] The defendant in Woods was convicted of first-degree murder and numerous other assaultive charges relating to the death of her eight-month-old pre-adoptive foster son. He began suffering from breathing difficulties and cyanosis shortly after going to live with the defendant. On appeal, she argued that the government had improperly used evidence of other acts involving her care of her other nine children.[15]
To prove that the child’s death was neither accidental nor from natural causes, the prosecution introduced the *637 testimony of a forensic pathologist. It then produced evidence that, during the previous 24 years, the defendant had custody of or access to nine other children among whom there were at least 20 episodes of cyanosis.
The appellate court found that the evidence had been properly admitted, ruling that it would prove that a crime had been committed because of the remoteness of the possibility that so many infants in the care and custody of defendant would suffer cyanotic episodes and respiratory difficulties if they were not induced by defendant’s wrongdoing, and at the same time, would prove the identity of defendant as the wrongdoer.[16]
Another case, United States v York, explains clearly how the doctrine of chances can be applied to negate innocent intent:
The man who wins the lottery once is envied; the one who wins it twice is investigated. It is not every day that one’s wife is murdered; it is more uncommon still that the murder occurs after the wife says she wants a divorce; and more unusual still that the jilted husband collects on a life insurance policy with a double-indemnity provision. That the same individual should later collect on exactly the same sort of policy after the grisly death of a business partner who owed him money raises eyebrows; the odds of the same individual reaping the benefits, within the space of three years, of two grisly murders of people he had reason to be hostile toward seem incredibly low, certainly low enough to support an inference that the windfalls were the product of design rather than the vagaries of chance.[17]
These cases stand for the proposition that evidence of other bad acts can be admissible when its logical relevance is not necessarily linked to an impermissible *638 character inference. Thus, the proponent of other acts evidence does not necessarily ask “the trier of fact to infer the defendant’s conduct. . . from the defendant’s personal, subjective character.”[18] Instead, the proponent may properly ask the trier of fact “whether the uncharged incidents are so numerous that it is objectively improbable that so many accidents would befall the accused.”[19]
This Court addressed the doctrine of chances in People v Crawford, recognizing that the doctrine is “widely accepted.”[20] The defendant in Crawford was convicted of possession with intent to distribute cocaine. The prosecution was allowed to introduce evidence of a previous conviction of the same type. On appeal, this Court stated that “the prosecutor must ‘make persuasive showings that each uncharged incident is similar to the charged offense and that the accused has been involved in such incidents more frequently than the typical person,’ ” and that “the applicability of the doctrine of chances depends on the similarity between the defendant’s prior conviction and the crime for which he stands charged.”[21]
In Crawford, the prior conviction was for the sale of cocaine to an undercover police officer.[22] The defendant’s pending charges stemmed from an incident where the police stopped the defendant for a routine traffic violation and discovered cocaine in his vehicle.[23] Although both his earlier conviction and the act *639 charged involved narcotics, this Court found the two offenses insufficiently similar to warrant admission of the similar acts evidence:
The prior conviction only demonstrates that the defendant has been around drugs in the past and, thus, is the kind of person who would knowingly possess and intend to deliver large amounts of cocaine.... Defendant’s prior conviction was mere character evidence masquerading as evidence of “knowledge” and “intent. ”[24]
A majority of this Court also touched on the doctrine of chances in People v VanderVliet[25] There, the defendant had been charged with second-degree criminal sexual conduct for incidents involving clients of the company where he worked as a case manager. The defendant denied any sexual contact with one victim and claimed his contact with the second victim was accidental. A third victim was discovered during the investigation.
The prosecution sought to introduce testimony of all three victims. The trial court held that the acts involving the other victims were not admissible in either of the pending cases. The Court of Appeals affirmed. A majority of this Court reversed the decision and held that the testimony of the first victim was relevant to show that the touching of the second victim was not accidental or inadvertent. A majority of this Court stated that
[ejvidence of both of the alleged assaults is logically relevant and probative of the defendant’s intent in the [second] case because it negates the otherwise reasonable assumption that the contact described in testimony by [the *640 second victim] was accidental, as opposed to being for the purpose of sexual gratification.[26]
APPLICABILITY OF THE DOCTRINE OF CHANCES TO THE PRESENT CASE
Crawford is instructive here. Under Crawford, the prosecution must make persuasive showings that (1) the past incidents are sufficiently similar to the charged offense to warrant admission, and (2) the accused has been involved in such incidents more frequently than the typical person.[27] The prosecutor has failed to meet the similarity prong in this case.
Defendant’s involvement in four fires in the span of 12 years is more frequent than the typical person experiences. Therefore, the prosecution has satisfied the second prong of Crawford for admitting the evidence under the doctrine of chances.
However, the prosecutor has failed to persuasively show a sufficient factual nexus between the prior fires and the charged offense. Crawford makes it clear that similarity is a key factor in determining the applicability of the doctrine of chances. All four fires in this case involved property that defendant either owned or possessed. However, three of them involved unexplained vehicle fires, one of which concerned his employer’s vehicle. The fourth fire caused smoke damage to defendant’s dwelling and was admittedly caused by the defendant’s roommate when he left a blanket on a kerosene heater.
The prosecution repeatedly stated in its closing argument that it did not have to prove the origin or the *641 cause of the fires. Instead, it simply asserted that there were fires and defendant was somehow connected to them. There was no proof that defendant caused any of the prior fires. None was considered suspicious, and defendant received little, if any, insurance money. And, in one case, defendant had to continue paying for the vehicle that the fire destroyed. Finally, the prosecution conceded that engine fires are not unusual and, in the case of defendant’s employer’s van, that defendant was not charged with maintaining the vehicle.
The prosecution has not shown sufficient similarity between the prior fires and the charged fire. No evidence was offered to show the cause of the vehicle fires. Likewise, no evidence was presented linking the fires, such as a common type of accelerant. The charged fire was a house fire and was allegedly started by the use of an accelerant on the living room love seat. Furthermore, it is worth noting that sometime before the charged fire, defendant substantially reduced the insurance coverage on his house.
The decision whether to apply the doctrine of chances is made on a case-by-case basis considering the particular facts of the case. This Court noted in Crawford that if the defendant’s “prior crime involved the concealment of drugs in the dashboard of his car (as the charged crime did), that evidence would likely be admissible under the doctrine of chances because of the stark similarity of the two crimes.”[28]
Likewise, in the present case, if the past fires were similar, whether in time, location, or other characteristics, they would likely have been admissible. I am hesitant to adopt a bright-line rule as to what constitutes a sufficient nexus between the past and the *642 charged crimes. The specific facts and circumstances of a particular case must govern whether the evidence should be admitted. However, I reject the prosecutor’s suggestion that this Court adopt a liberal application of the doctrine of chances lest it weaken the prohibition against character evidence, especially when used to prove the actus reus.[29]
I strongly disagree with the majority’s position that the past fires were admissible to negate defendant’s claim that the fire was a mere accident. First, the majority claims that the other acts must be only of “the same general category.” This is contrary both to Crawford, as discussed earlier, and to Rex v Smith, the case that gave birth to the doctrine. Similarity was essential in Rex v Smith: the defendant’s previous two wives were found drowned in the bathtub, just as was Smith’s present wife.[30] Also, in Woods: nine children under the defendant’s care suffered at least 20 episodes of cyanosis, and seven of these children died. The defendant was on trial for the murder of her eight-year-old son who died the same way.[31] A showing of similarity should be essential in the case on appeal, as well.
To allow prior acts evidence under the doctrine of chances whenever someone has the misfortune of being connected to an event of “the same general category” eviscerates the concept that “in our system of jurisprudence we try cases, rather than persons . . . .”[32] Furthermore, a majority of this Court in VanderVliet cautioned that using unlikely coincidence to prove the actus reus *643 “requires a more rigorous enforcement of relevancy because it more closely approaches the forbidden inference of character to conduct.”[33]
Because the evidence of the past fires in this case was not admissible under MRE 404(b), I would hold that the trial court abused its discretion in admitting it. It was impermissible character evidence.
MRE 403
Even if the evidence of the previous fires were relevant, I would exclude it under MRE 403 because the danger of unfair prejudice substantially outweighed its probative value. People v Oliphant discusses the framework for evaluating evidence under MRE 403:
In determining admissibility [under MRE 403] the court must balance many factors including: the time necessary for presenting the evidence and the potential for delay; how directly it tends to prove the fact in support of which it is offered; whether it would be a needless presentation of cumulative evidence; how important or trivial the fact sought to be proved is; the potential for confusion of the issues or misleading the jury; and whether the fact sought to be proved can be proved in another way involving fewer harmful collateral effects.[34]
Evidence is unfairly prejudicial if a danger exists that the jury will give marginally probative evidence undue or preemptive weight.[35] Under Oliphant and Crawford, whether the charged act is similar to the uncharged act is important when determining the probative value of *644 the uncharged act. In this case, the probative value of the uncharged acts is slight given the dissimilarities between them and the charged fire.
The potential prejudice of introducing the other fires in this case was great. In fact, as long as it was not carefully examined, it was the best evidence that the prosecution had against defendant. The only substantive evidence against him was the fire investigators’ testimony and a possible motive established by his need for money. When presenting her case, the prosecutor came back repeatedly to the previous fires. It is likely that the jury drew the unsubstantiated inference that defendant had the propensity to start fires.
In Crawford, this Court made a similar determination regarding the defendant’s prior drug conviction, stating:
Even if we were to find that the evidence of the defendant’s prior conviction had some logical relevance distinct from the impermissible character inference, we would nonetheless conclude that it should have been excluded by MRE 403 because the danger of unfair prejudice substantially outweighed whatever marginal probative value it might have had.[36]
This Court added that “the specter of impermissible character evidence is likely to have significantly overshadowed any legitimate probative value.”[37] The evidence at issue in Crawford was a prior conviction, which is arguably more prejudicial than the prior fires in this case because the prior drug offense was attributable to the defendant. In this case, it was only implied that defendant committed the prior fires. However, I believe similar logic applies.
*645 Moreover, the fact sought to be proved in this case, a lack of accident, could have been argued through other, less prejudicial evidence.[38] Specifically, the prosecution put three experts on the stand. Two stated that, in their opinion, the fire was arson. One reasoned that the burn patterns ruled out accidental causes. In fact, the prosecution concedes that “there was substantial evidence that the instant fire was an incendiary fire, set by some human agency.”[39] In addition, the prosecution presented circumstantial evidence that defendant was associated with the fire, showing that he was the last person to leave the house and was in arrears on mortgage payments.
Therefore, the prosecution could have attempted to make its case for an intentional act without using past acts evidence that involved harmful collateral effects.[40] Given that the prior fires were dissimilar to the charged fire, the evidence about them was unnecessary to prove lack of accident, and its probative value was minimal.
However, because “[t]he distinction between a verboten character theory and a permissible chances theory is a thin line which a lay juror could easily lose sight of,”[41]1 think that the prejudicial effect was high. There was little evidence connecting defendant to the *646 fires, and the repeated references to the other fires likely greatly enhanced the danger of unfair prejudice.[42]
Finally, although the trial court gave a limiting instruction to the jury, because of the slight probative value of the evidence, the instruction was likely ineffective. As one critic of the doctrine has noted “such a limiting instruction does more to satisfy legal scholasticism than to direct the minds of real jurors” because “[t]o the ordinary human mind,. . . the division between the prescribed and the proscribed uses [of the uncharged misconduct evidence] may be a bit difficult to perceive.”[43]
Thus, the evidence of the other fires was inadmissible under MRE 403.
HARMLESS ERROR
I agree with the Court of Appeals that the improper introduction of the evidence was not harmless. The evidence against defendant was not overwhelming and the prosecution relied substantially on the prior fires to argue the charged fire must have been intentional.[44] *647 The prosecution argued in closing that defendant had a “pattern” of fires and that the prior fires were important to show his knowledge of fires and his intent. As a result, I agree with the Court of Appeals that the prosecution “relied substantially on the number of prior fires to argue that the charged fire must have been intentionally set by defendant.”[45] Because of this, there was a high chance that the evidence of the other fires affected the outcome.
conclusion
The evidence of past fires that was introduced at trial was improper character evidence and it was therefore not relevant. I would not carve out an exception to admit the evidence under the doctrine of chances given the dissimilarities between the past fires and the charged fire. The past-fires evidence was also inadmissible under MRE 403 because the danger of unfair prejudice substantially outweighed whatever probative value it had. The error in admitting the evidence of the past fires was not harmless.
Accordingly, the Court of Appeals properly remanded this case for a new trial.
Cavanagh and Hathaway, JJ., concurred with Kelly, C.J.

 I do not agree with the majority’s assertion that each of these fires “arguably benefitted defendant in some way.” The 1994 fire destroyed defendant’s father’s truck, and defendant had to continue to make payments on it; the 2001 fire burned defendant’s van and mobile home, and the damage to the mobile home was not covered by insurance; defendant collected no insurance proceeds on the burned work vehicle, and all his personal tools were destroyed. If defendant wanted a new work truck enough to set the one he drove on fire, one would think he would have taken his tools out of it beforehand.

 People v Mardlin, unpublished opinion per curiam of the Court of Appeals, issued May 5, 2009 (Docket No. 279699).

 People v Mardlin, 485 Mich 870 (2009).

 People v Babcock, 469 Mich 247, 269-270; 666 NW2d 231 (2003).

 People v McDaniel, 469 Mich 409, 412; 670 NW2d 659 (2003).

 People v Crawford, 458 Mich 376, 384; 582 NW2d 785 (1998).

 Id.

 Id. at 385.

 Id. at 390.

 Imwinkelried, An evidentiary paradox: Defending the character evidence prohibition by upholding a non-character theory of logical relevance, The doctrine of chances, 40 U Rich L R 419, 422 (2006). The doctrine is viewed as a subset of MRE 404(h) rather than a stand-alone doctrine.

11 1 Imwinkelried, Uncharged Misconduct Evidence (rev ed, March 2008 supp), ch 4, § 4:3, pp 4-42 and 4-43.

 Rex v Smith, 11 Crim App Rep 229 (1915). Also known as the “brides in the bath” case. See Metropolitan Police, The ‘Brides in the Bath’ Murders
*636 <http://www.met.police.uk/history/brides.htm> (accessed May 13, 2010).

 Imwinkelried, 40 U Rich L R at 435 (2006) (footnotes omitted).

 United States v Woods, 484 F2d 127 (CA 4, 1973).

 The evidence established that three of the defendant’s children got sick or died while being held in her arms, one died while in bed with the defendant, and another child was alone with the defendant when he died.

16 Id. at 135.

17 United States v York, 933 F2d 1343, 1350 (CA 7, 1991), cert den 502 US 916 (1991).

 Crawford, 458 Mich at 393 (citation and quotation marks omitted).

 Imwinkelried, 51 Ohio St L J 575, 586-587; see also Crawford, 458 Mich at 393.

 Crawford, 458 Mich at 393.

 Id. at 394-395 (citation omitted).

 Id. at 396.

 Id.

24 Id. at 396-397.

 People v VanderVliet, 444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

 VanderVliet, 444 Mich at 80-81.

 Crawford, 458 Mich at 394. The determination of what constitutes “more frequently than the typical person” is one best left to the trial court. But I agree with Imwinkelried that statistical data is helpful in establishing frequency. See Imwinkelried, 51 Ohio St L J at 591.

 Crawford, 458 Mich at 395 n 13.

 See Imwinkelried, 51 Ohio St L J at 588.

 Smith, 11 Crim App Rep at 230; see also Eggleston, Evidence, Proof and Probability (2d ed), pp 92-93.

 United States v Woods, 484 F2d 127 (CA 4, 1973).

 Crawford, 458 Mich at 384, citing United States v Mitchell, 2 US 348, 357; 1 L Ed 410 (1795).

 VanderVliet, 444 Mich at 87 n 47. Actus reus is defined as the wrongful deed that comprises the physical components of a crime and that generally must be combined with criminal intent to establish criminal liability. Black’s Law Dictionary (8th ed).

34 People v Oliphant, 399 Mich 472, 490; 250 NW2d 443 (1976).

 Crawford, 458 Mich at 398.

36 Id. at 397-398.

 Id. at 398.

 Cf. United States v Lewis, 224 US App DC 74,80; 693 F2d 189 (1982) (stating that extrinsic acts evidence was neither cumulative nor unnecessary where it “could prove something that the other evidence could not prove: that appellant... was the mastermind of the money order ‘scam’ ”).

 Prosecutor’s brief, p 38.

 Notably, this Court granted leave to appeal to determine if the other fires could be used to show a lack of accident. If the prosecution was seeking to use the other fires to prove identity, the acts were not sufficiently similar to be admissible. See People v Golochowicz, 413 Mich 298, 309; 319 NW2d 518 (1982), and Imwinkelried, 51 Ohio St L J at 589.

 Imwinkelried, 51 Ohio St L J at 602.

 See Crawford, 458 Mich at 400 n 17. Contrary to the majority’s suggestion, this does not contradict the “inclusionary” approach to prior misconduct evidence. Id. at 400 n 8 (“The distinction between MRE 404(b) as a rule of ‘inclusion’ as opposed to a rule of ‘exclusion’ does not signify a shift to a more liberal policy toward the admission of prior acts evidence.”). Nor does the inclusionary approach mean the courts should err on the side of admission. Id.

 Imwinkelried, 40 U Rich L R at 442, quoting Uviller, Evidence of character to prove conduct: Illusion, illogic, and injustice in the courtroom, 130 U Pa L R 845, 879 (1982).

 Although not affecting this analysis, I also note that after defendant was convicted, an expert who previously worked with the Detroit Fire Department offered to investigate on a pro bono basis. He tested a power cord that ran behind the couch to an electrical outlet. Defendant’s roommate testified that the power cord was from a computer and had to be “jiggled” to get the computer to work. Defendant’s electrical expert *647 tested the wiring and junction box and determined that they were the cause of the fire. The testing was videotaped. None of the prosecution’s witnesses tested this box or wire. This evidence, in correlation with the improperly admitted evidence in this case, raises serious concerns about the fairness of defendant’s trial.

 Mardlin, unpub op at 5.